**RJR NABISCO, INC., Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 91–8248.

United States Court of Appeals, Eleventh Circuit.

March 17, 1992.

Rehearing Denied April 15, 1992.

---

**1458**

Wayne S. Kaplan, Mayer, Brown & Platt, Chicago, Ill., Andrew L. Frey, Mayer, Brown & Platt, Washington, D.C., for plaintiff-appellant.

Gary R. Allen, Kevin M. Brown, Brian C. Griffin, Robert S. Pomerance, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KRAVITCH and EDMONDSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Plaintiff RJR Nabisco, Inc. ("Nabisco") filed an income tax action in the United States District Court for the Northern District of Georgia seeking a refund of interest it had paid under protest to the Internal Revenue Service ("IRS"). Nabisco moved for summary judgment, and the government similarly cross-motioned. The district court denied Nabisco's motion and entered an order granting summary judgment on behalf of the government. 759 F.Supp. 815. Nabisco appeals.

## I. INTRODUCTION

Prior to the 1982 changes in the Internal Revenue Code ("Code"), simple interest was assessed on any tax deficiency or tax overpayment. The accrual of compound interest was expressly prohibited by the Code. Section 344 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") repealed this prohibition and provided that all interest assessed on tax deficiencies and overpayments would be compounded. The effective-date provision of Section 344 stated that the changes discussed within the text would "apply to interest accruing after December 31, 1982." This court must now determine whether Section 344 of TEFRA imposes compound interest on a taxpayer debt remaining unpaid after December 31, 1982, the principal portion of which had been paid previously such that the corpus of the debt consisted solely of simple interest accrued prior to January 1, 1983.

## II. FACTS

The facts in this case are not in dispute. A stipulation of facts was signed by both parties and submitted to the district court on August 31, 1990. Both sides agree that the resolution of the current controversy lies solely in the interpretation of Section 344 and not in discrepancies in the underlying factual scenario.

By means of a 1980 audit of Nabisco, the IRS assessed deficiencies in Nabisco's income tax payments for the years 1971 through 1974. Following negotiations with the appeals division of the IRS, Nabisco agreed, on July 16, 1985, to a final settlement of $51,759,762 to cover income tax deficiencies and associated penalties. Prior to the settlement, on February 1, 1982, Nabisco paid $60 million to the IRS. Under an administrative procedure existing at the time, taxpayers were permitted to make advance payments during the pendency of a tax dispute in order to terminate the running of simple interest on the disputed

tax. Revenue Procedure 64–13, 1964–1 (Part 1) C.B. 674. In accordance with this procedure, Nabisco designated its $60 million payment as a deposit for the payment of any tax thereafter found to be due for the taxable years 1971 through 1974.

Nabisco's advance payment covered the entire amount of the tax deficiency ultimately determined to be due for the contested years. Therefore, pursuant to Section 4.01 of Revenue Procedure 64–13, the running of interest on plaintiff's tax deficiency for the 1971–1974 taxable years terminated completely. This termination reflected the law as of February 1, 1982, the date of Nabisco's advance payment. By letter dated February 8, 1982, the IRS acknowledged receipt of Nabisco's advance payment and confirmed that the running of interest on any ultimate tax deficiency satisfied by the advance payment had been terminated as of the date of the IRS's receipt of the funds.

On August 28, 1985, the IRS issued four notices concerning the tax controversies for the years 1971 through 1974. The notices applied the $60 million advance payment to the $51,759,762 tax deficiencies and penalties.[1] The notices also set forth the interest that the IRS claimed to be due on the agreed tax deficiencies. This interest consisted of two components. The first component is not in dispute here. That amount, $33,253,265.41, was simple interest computed from the date of the deficiencies through the advance payment date of February 1, 1982.

The second component consisted of compound interest computed on the outstanding simple interest of $33,253,265.41 that had ceased accruing on February 1, 1982. The compounding began January 1, 1983 and ended August 28, 1985, the date of the IRS's statement of taxes due. The aggregate compound interest amount for the four years was $12,861,568.13.

The IRS found authority for the imposition of compound interest under Section 6622(a) of the Code, which provides that any interest required to be paid under the Code be compounded daily. 26 U.S.C. 6622(a). Section 6622(a) was added to the Code by Section 344 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). Pub.L. No. 97–248, 96 Stat. 324, 635 (1982). Under an effective-date provision set forth in Section 344(c) of TEFRA, the compounding rule of Section 6622(a) would apply "to interest accruing after December 31, 1982." 26 U.S.C. 6622 note.

On September 6, 1985, plaintiff paid the IRS $46,114,733.54, the full amount of interest, simple and compound, described in the notices of August 28, 1985. No additional interest was assessed for the period from the notice date of August 28, 1985 through the payment date of September 6, 1985 because Nabisco's payment was made within ten days of the IRS' notice in accordance with Section 6601(e)(3) of the Code.

On January 7, 1986, Nabisco submitted written claims to the IRS for refund of the compound interest amounts included in Nabisco's September 6 payment. The IRS denied Nabisco's claims for refund. Plaintiff then instituted the present action in the federal courts.

### III. STANDARD OF REVIEW

■ Because this case involves an appeal from a summary judgment, we review the claims de novo. *Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1570 (11th Cir.1991). In determining whether summary judgment is appropriate, we apply the same legal standards that control the district court. *Buxton v. City of Plant City,* 871 F.2d 1037, 1040 (11th Cir.1989).

### IV. THE STATUTE: I.R.C. § 6622

■ The resolution of the dispute depends upon the interpretation of an effective date provision of a Section of the Internal Revenue Code. More specifically, we must determine whether compound interest should be assessed on a certain taxpayer debt pursuant to Section 6622 of the Code when that debt consists only of interest

---

1. The remaining $8,240,238 of plaintiff's payment was applied toward subsequently agreed upon tax deficiencies for other taxable years that are not relevant to this proceeding.

and not of principal or whether that debt is exempt from such interest under the former simple-interest regime.

Simple interest is calculated only on an outstanding principal debt. Compound interest, on the other hand, is calculated on an outstanding principal amount *as well as* any interest owed but unpaid at the date of the calculation. When compound interest is calculated, the only number examined is the entire debt owed by the taxpayer; what that debt consists of is irrelevant. In contrast, under a simple-interest regime, the only relevant number for purposes of calculating interest owed is the outstanding principal amount, regardless of how far interest payments are in arrears.

#### A. *Text and Legislative History*

Section 344 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") added Section 6622 to the Internal Revenue Code. This new Section repealed the prior statute that subjected tax deficiencies to simple interest and that specifically prohibited the imposition of compound interest on such deficiencies. Under the new statute, all tax deficiencies are subject to compound interest:

Sec. 6622 INTEREST COMPOUNDED DAILY.
(a) GENERAL RULE.—In computing the amount of any interest required to be paid under this title ... such interest and such amount shall be compounded daily.

Section 6622 note set forth the effective date for the new regime:

EFFECTIVE DATE.—The amendments made by this Section shall apply to interest accruing after December 31, 1982.

§ 344 of TEFRA, Public No. 97–248, 96 Stat. 324, 635–36 (1982).

Until the passage of TEFRA in 1982, tax deficiencies were subject only to simple interest. I.R.C. § 6601. Interest accrued only on the unpaid principal amount, not on any accrued but unpaid interest amount. In fact, the old Code specifically prohibited any compounding of interest: "No interest under this Section shall be imposed on the interest." I.R.C. § 6601(e)(2) (in effect before TEFRA). This prohibition was removed by Section 6601(e)(2) of the new Code.

In addition, an administrative procedure in effect under the old regime provided that an advance payment by a taxpayer to cover a principal obligation terminated the running of interest even if the interest owed on that debt was left unpaid.[2]

#### B. *Plain Meaning*

■■■ The first step in any question of statutory interpretation must be an examination of the language of the statute itself. *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978) (citing *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977) and *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976)). If this language is unambiguous, the courts must enforce the statute as written absent a clearly expressed legislative intent to the contrary. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985).

■■ Nabisco claims that the statute unambiguously supports its position and that accordingly the inquiry must cease without further examination of Congressional intent. In the case of a clearly worded statute, "it would take a very clear expression in the legislative history of congressional intent to the contrary to justify the conclusion that the statute does not mean what it

---

**2.** The relevant revenue procedure read:
26 CFR 601.602: Forms and instructions
Sec. 4. INTEREST
.01 The running of interest on any amount of the deficiency which is satisfied by applica-tion of an advance payment ... will be terminated on the date the payment is received. Rev.Proc. 64–13 (1964) 301.6213–1, 301.6601–1

so plainly seems to say." *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Appellant argues that no such "clear expression" exists in the legislative history to allow this court to ignore the plain words of the statute.

The government disagrees with Nabisco's reading of the statute and argues that, on its face, Section 6622 permits imposition of the disputed taxes. In addition, appellee claims that its reading of the statute comports with the legislative history and with the IRS's interpretation of the statute.

We first examine the plain meaning of the statute to determine if Congressional intent concerning the issue at hand is so clearly embodied in the text as to eliminate the need for this court to examine the legislative history or agency regulations.

### C. *The Effective Date Provision*

The debate between Nabisco and the IRS centers on the reading of Section 6622 note, the effective date provision of TEFRA. This Section provides: "The amendments made by this Section shall *apply* to *interest accruing* after December 31, 1982" (emphasis added). Nabisco's entire case rests on its claim that this Section *unambiguously* deprives the government of the right to assess compound interest on an outstanding simple-interest debt that had ceased accruing prior to the effective date of the statute.

Essentially, Nabisco argues that because interest on its tax debt had ceased accruing prior to 1983, this debt is exempt from the requirements of Section 6622. Indeed, both parties have stipulated that "[n]o interest on the tax deficiencies was accruing on or at any time after December 31, 1982." Stip. ¶ 16 (R1–16–6). Nabisco argues that the amendments imposing a compound interest regime cannot "apply" to its debt under Section 6622 note since no interest was "accruing" after December 31, 1982. While Nabisco's argument is not without merit, it is also not such a definitive reading of the statute as to eliminate the need for this court to refer to the legislative history to uncover Congress's intent on the issue.

Nabisco proves nothing by stressing that *simple* interest had ceased to accrue on its debt prior to the institution of the new regime. By operation of the new statute, simple interest ceased to accrue on all taxpayers' debts as of January 1, 1983. As of that date, only compound interest accrues on any debt, putting all taxpayers in a situation similar to Nabisco's vis-a-vis the "accruing" language of the statute. Hence, appellant's argument that the effective-date language exempts it from compound interest cannot logically follow from the fact that interest had ceased to accrue on its debt unless Congress also intended to exempt *all* taxpayers from the operation of the statute.

A better interpretation would recognize that interest actually *was* "accruing" on Nabisco's debt. True, simple interest had ceased to accrue in 1982 when Nabisco paid off its principal obligation. However, by operation of the statute, interest began accruing again on January 1, 1983 for Nabisco and for all other taxpayers. I.R.C. § 6622(a); I.R.C. § 6622 note.

Another interpretation of the statute, as valid as Nabisco's, reads "interest accruing" as a reference to the method of interest calculation and not to the corpus on which such calculation will occur. The government argues that Congress intended the wording of Section 6622 note to stress that whenever interest accrues after December 31, 1982, it will do so in a compound manner rather in the simple manner of the past. In other words, the current statute would be identical to one reading "the amendments made by this Section shall apply to interest *assessed* under this regime after December 31, 1982." Under this reading, the effective date clause does not tell us upon what corpus this financial calculation will occur, i.e. newly acquired debts or any debt existing as of the effective date. Thus, resort to legislative history and agency interpretation as well as other interpretation tools is necessary because the clause does not address the specific issue of whether Congress intended compound interest to be assessed on inter-

est accrued but unpaid as of January 1, 1983.

Finally, the government's position, rather than Nabisco's, is supported by the theory underlying the technique of compounding interest. Under a compound interest regime, the distinction between principal and interest disappears. A debt is a debt, whether the corpus consists of principal or interest or a combination thereof. A debt of $1 principal and $99 unpaid interest would be assessed the same compound interest as a debt consisting of $100 in principal and no outstanding interest. Thus, it would be illogical to assume, without outside support, that Congress meant to differentiate between principal and interest when discussing amounts owing as of the effective date of the statute. Congress may have meant otherwise; it could have intended to grandfather certain taxpayers in certain positions. Such an intention would require support in the legislative history, however, because it is far from clear on the face of the statute or from the purposes of imposing a compound interest regime.

### D. 6622(a): The Compound Interest Requirement

The government claims that the text of Section 6622(a) also permits imposition of compound interest on taxpayer's debt. This Section reads: "[i]n computing the amount of *any interest* required to be paid under this title ... such interest and such amount shall be compounded daily" (emphasis added). The government stresses the "any interest" wording and claims that Nabisco's unpaid simple-interest debt must, by definition of the statute, be included in compound interest computations. Under a more natural reading of the Section, however, "any interest" refers to the method of calculation and not the corpus on which the interest will be incurred. The wording was meant to indicate that the regime of simple interest was to be *completely* eliminated; any interest assessed in the future will be assessed using a compound calculation rather than a simple-interest calculation. Hence, 6622(a) does not appear to speak to the issue at all and does not

support nor weaken the position of either party.

### E. Ambiguity in the Statute

Neither Section 6622(a) nor Section 6622 note clearly addresses the question of whether Nabisco's simple-interest debt should be subject to compound interest. Even if the statute is perceived as addressing this exact question, Congress's intentions remain ambiguous. Both parties present logical textual analyses of 6622(a) that are supported by the plain words of the statute. Given this impasse, it is necessary to turn to the legislative history and agency regulations in order to best determine whether Congress intended to subject taxpayers in Nabisco's position to compound interest on their outstanding simple-interest obligations.

## V. LEGISLATIVE HISTORY

██ Both the conference committee report and the joint committee report support the government's argument that Congress intended to subject Nabisco's simple-interest debt to the compounding requirement of Section 6622. Indications of congressional intent contained in a conference committee report deserve great deference by courts because "the conference report represents the final statement of terms agreed to by both houses, [and] next to the statute itself it is the most persuasive evidence of congressional intent." *Demby v. Schweiker*, 671 F.2d 507, 510 (D.C.Cir.1981); *Davis v. Lukhard*, 788 F.2d 973, 981 (4th Cir.), *cert. denied, Staton v. Lukhard*, 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986) (citing *Demby* for the proposition that the conference report is the most persuasive evidence of Congressional intent after the statute itself); *Ecee, Inc. v. Fed. Energy Reg. Com'n*, 645 F.2d 339 (5th Cir.1981) (Conference committee reports are "useful" and "persuasive" evidence of congressional intent, but not conclusive.); *Dept. of Health & Welfare, State of Idaho v. Block*, 784. F.2d 895, 901 (9th Cir.1986) (citing *Demby* ); *Monterey Coal v. Fed. Mine Safety & Health Review*, 743 F.2d 589, 598

(7th Cir.1984) ("Such reports are, apart from the language of the statute itself generally the most reliable indicators of congressional intent."); *Nat. Ass'n of Greeting Card Pubs. v. U.S. Post. Ser.*, 462 U.S. 810, 832, n. 28, 103 S.Ct. 2717, 2731, n. 28, 77 L.Ed.2d 195 (1983) (implying the substantial significance of conference reports in comparison to other forms of legislative history).

## A. *Conference Committee Report*

Two sentences of the conference committee report directly address the issue of an outstanding debt consisting only of interest. See Conference Committee Report, Conference Report to Accompany HR 4961, Tax Equity & Fiscal Responsibility Act of 1982, S.Rep. No. 530, 97th Congress, 2d Session at 595–96 (1982). In referring to the new method of calculation, the report notes that "[t]his compounding requirement would apply to interest accruing after December 31, 1982, on amounts (*including interest*) remaining unpaid after that date." *Id.* at 595. (emphasis added). This sentence indicates that an interest debt, outstanding as of January 1, 1983, will accrue compound interest.

Nabisco interprets this provision and the reference to "amounts (including interest)" as merely describing the mechanics of compound interest. We find Nabisco's reading to be unsupported by the text. By talking about interest *"remaining* unpaid" after December 31, Congress was attempting to address directly taxpayers in Nabisco's position: those taxpayers who straddled the old and new interest regime and who entered the new regime with an outstanding debt consisting of principal and interest or interest alone.

The report also notes that "[i]n a case in which the principal portion of an obligation is satisfied, and interest remains outstanding, such interest will, of course, be compounded." This provision does not address the transition issue of whether taxpayers with outstanding debts as of January 1, 1983 will be grandfathered under the old law. However, it does reveal Congress's general intent to repeal the agency regula-tion that terminated interest accrual upon a taxpayer payment of the full principal debt. See supra note 2. This sentence taken together with the reference to "amounts (including interest) remaining unpaid after [December 31, 1982]", leads us to conclude that Congress intended to collect interest on Nabisco's simple-interest debt that had ceased accruing interest prior to the effective date of Section 6622.

Other courts that have addressed this particular issue have also relied on this conference report to support their concurrence with the government's interpretation of Section 6622. See *Gannet v. U.S.*, 877 F.2d 965 (Fed.Cir.1989) (relying on the conference report, Senate report and treasury regulations which were deemed reasonable and hence enforceable under *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982)); *Cohn v. U.S.*, 872 F.2d 533, 534 (2nd Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 145, 107 L.Ed.2d 103 (1989) ("Since the conference report sets forth the final agreement of both houses it is entitled to great weight in determining congressional intent."); *Purer v. U.S.*, 872 F.2d 277 (9th Cir.1989) (relying on the conference report and the treasury regulations).

## B. *Joint Committee Report*

The joint committee report, like the conference committee report, indicates that the government correctly imposed compound interest on Nabisco's simple-interest obligation. This report squarely addresses the issue by noting that "[t]his compounding requirement applies in determining interest after December 31, 1982 on any amount, *whether principal or interest, owing on or after January 1, 1983.*" Report by the Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, H.R. 4961, 97th Cong., 2d Sess. p. 256 (emphasis added). The wording of this report indicates that *any* debt remaining unpaid as of January 1, 1983, is subject to compound interest, regardless of whether the debt consists of an unpaid principal amount or a debt of inter-

est assessed under the simple-interest regime.

Together, the conference committee report and the joint committee report indicate that Congress intended to subject interest accrued but unpaid as of January 1, 1983 to compound interest from that day forward. There is little room for any other interpretation of the legislative history. To the extent the text of the statute is ambiguous or incomplete in addressing the current issue, this history fills the gaps as to Congress's intent concerning taxpayers in Nabisco's situation and demonstrates that Congress intended to subject taxpayers in Nabisco's situation to the compound interest requirements of Section 6622.

## VI.  IRS REGULATIONS/AGENCY INTERPRETATIONS

■ Because Congress spoke to the precise issue at hand, there is no need to discuss the IRS interpretation of Section 6622. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). In order to silence Nabisco's allegation that the history is ambiguous, however, we will briefly examine the relevant agency regulations.

■ It has been well established that: When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of congress is clear, that is the end of the matter for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781. Assuming arguendo that Congress has not addressed the precise question at issue, we turn to the IRS's regulations to determine whether they embody a "reason-

able" interpretation of Congressional intent, for we will defer to a regulation that implements a Congressional mandate in a reasonable manner. *Id.* at 845 [3], 104 S.Ct. at 2783, *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979); *United States v. Cartwright,* 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973). The Supreme Court has been particularly deferential in the area of tax laws because it is "not in the business of administering the tax laws of the Nation. Congress has delegated that task to the Secretary of the Treasury, 26 U.S.C. § 7805(a), and regulations promulgated under this authority, if found to 'implement the congressional mandate in some reasonable manner must be upheld.'" *Cartwright,* 411 U.S. at 550, 93 S.Ct. at 1716 (citing *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967)).

Two separate provisions of the IRS regulations deal with taxpayers in Nabisco's situation. Both parties agree that these regulations clearly articulate the IRS' position in this case. They disagree over the amount of deference to be afforded to the agency's interpretation of Section 6622.

Treasury Regulation § 301.6622–1(c), in no uncertain terms, expresses the IRS's intent to subject accrued but unpaid simple interest, accumulated prior to January 1, 1983, to the compound interest requirement of Section 6622. This regulation sets forth the agency's position, stating that "[t]he unpaid interest (or other amount) that shall be compounded daily includes the interest (or other amount) accrued but unpaid on December 31, 1982." This regulation then gives an example of an individual who has paid off his principal obligation before January 1, 1983, but has not satisfied his interest debt (consisting of simple interest) at that time. The example demonstrates that the taxpayer would owe the IRS the outstanding simple-interest amount *plus* an

**3.** "Once [the court] determined, after its own examination of the legislation, that Congress did not actually have an intent regarding the applicability of the bubble concept to the permit program, the question before it was not whether in its view the concept is 'inappropriate' in the general context of a program designed to improve air quality, but whether the Administrator's view that it is appropriate in the context of this particular program is a reasonable one." *Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783.

additional amount equal to compound interest accruing on that simple interest from January 1, 1983 until payment of interest owed in its entirety. This example unambiguously expresses the IRS's position that accrued but unpaid simple interest is subject to compound interest as of January 1, 1983.

Similarly, Treasury Regulation § 301.-6601–1(f)(2) indicates the IRS's belief that a debt such as Nabisco's is subject to compound interest as of January 1, 1983. That regulation removes the prohibition against imposing interest on interest, stating that this old prohibition "shall not apply after December 31, 1982, with respect to interest accruing after such date, or accrued but unpaid on such date." Nabisco argues that this regulation is entitled to no deference because it contradicts the plain meaning of Section 6622. According to Nabisco, the very wording of this regulation is an IRS recognition that the statute contains no authorization for the imposition of compound interest on their simple-interest debt. It claims that the IRS added the words "accrued but unpaid" to the actual text of the statute because the original language was not broad enough, standing on its own, to cover "accrued but unpaid" interest such as Nabisco's debt. Nabisco argues that the IRS had no authorization to broaden its mandate in this manner and that the regulation is therefore owed no deference because it contradicts the text of the statute. *Cartwright*, 411 U.S. at 550, 93 S.Ct. at 1716 (rejecting a Treasury Regulation as unreasonable, unrealistic and *inconsistent* with I.R.C. § 2031 and the Investment Company Act of 1940).

Because the statute does not address the issue precisely and because the legislative history supports the IRS's interpretation, the IRS's interpretation must be considered "reasonable" and hence upheld by this court. *National Muffler Dealers Ass'n,* 440 U.S. at 476–77, 99 S.Ct. at 1306–07; *Cartwright,* 411 U.S. at 550, 93 S.Ct. at 1716 (1973).

## VII. TAXPAYER EXPECTATIONS

Nabisco implicitly bases its claims on a perceived Congressional intent to grandfather certain tax debts in order not to frustrate taxpayer expectations under the old regime. However, Congress did directly address this issue, and its failure to do so in the manner suggested by Nabisco strengthens the government's argument that Congress did not intend to grandfather Nabisco's debt.

The bill was signed on September 2, 1982, but did not take effect until January 1, 1983. Congress gave taxpayers four months in which to pay their debts, both principal and accrued interest, and thereby avoid incurring compound interest on their outstanding interest debt. This time period should have been adequate for a taxpayer as sophisticated as Nabisco.

If taxpayers had any question about whether the new regulations applied to their outstanding debts, they could have requested a Private Letter Ruling from the IRS. In addition, taxpayers should have been put on notice by Revenue Procedure 83–7 (mentioned above) which discusses this exact issue and gives an example of a taxpayer in a position identical to that of Nabisco. In the example, the IRS demonstrated that the taxpayer would owe compound interest calculated, even on a debt consisting solely of accrued simple interest, January 1, 1983 until the date the taxpayer paid all outstanding amounts.

Finally, Congress changed the Internal Revenue Code because the former system undercompensated the creditor, whether it was the government in the case of a tax deficiency or the taxpayer in the case of an overpayment. S.Rep. 494, Vol. 1, 97th Cong., 2d Sess. 305 (1982 U.S.Code Cong. & Admin.News 781, 1046). Congress determined that the failure to tax accumulated but unpaid interest placed an "unreasonable burden" on the IRS. *Id.* Without indications to the contrary, it seems logical that Congress would have intended to remedy this inequitable "burden" as soon as possible rather than grandfather all debts incurred prior to the imposition of Section 6622.

## VIII. OTHER CASES ADDRESSING THE ISSUE

Although this issue is one of first impression in this circuit, similar cases have come

before other circuits. In each instance, the relevant court found that the government had the authority to assess compound interest on a debt outstanding as of January 1, 1983. Nabisco argues that these cases are distinguishable, or in the alternative, that they are incorrectly decided.

In *Gannet v. United States*, 877 F.2d 965 (Fed.Cir.1989), the Federal Circuit held that compound interest accrued on a debt of principal and interest that was outstanding as of the effective date of Section 6622. According to that court, the statute spoke unambiguously in favor of the government: "under the plain language of the statute the IRS has correctly interpreted and applied the statute." *Id.* at 967. Because the *Gannet* court found that the statute spoke directly to the issue at hand, resort to the legislative history was unnecessary. Nevertheless, the court analyzed the history and found that "Congress intended to apply the compound interest legislation to *all* unpaid interest on the effective date of Section 344." *Id.* at 968 (emphasis in original).

The Second Circuit addressed the same issue in *Cohn v. United States*, 872 F.2d 533 (2d Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 145, 107 L.Ed.2d 103 (1989). Cohn claimed that the statute exempted interest owed prior to January 1, 1983 from the compound interest rule. The *Cohn* court found the matter "simple and straightforward" and only briefly discussed its reasoning. *Id.* at 533. In sum, the court held that "the statute is clear on its face and in no manner suggests that the IRS is prohibited from imposing compound interest on taxes and simple interest due at the time TEFRA went into effect." *Id.*

Similarly, a taxpayer in *Purer v. United States*, 872 F.2d 277 (9th Cir.1989), argued that Section 6622 applies only to the principal due on pre–1983 tax deficiencies and not to any accumulated interest. The Ninth Circuit held that the taxpayer's argument was "without merit" because the effective-date provision "does not say that the new method of calculating interest will apply only to pre–1983 principal." *Id.* at 277.

Nabisco attempts to distinguish its situation from that of the plaintiffs in *Gannet, Cohn*, and *Purer*. In each of those cases, the taxpayer owed principal as well as interest as of January 1, 1983. Nabisco argues that because a deficiency was still owing "interest *was* accruing after December 31, 1982, while [in Nabisco's case] no interest whatever was accruing after December 31, 1982." Appellant's Brief at 18 (emphasis in original). Because interest "was accruing" in *Gannet, Cohn,* and *Purer,* Nabisco argues that Section 6622 applies to their debts but does not apply to its own debt on which interest had ceased to accrue prior to the effective date of the statute.

As discussed previously, this logic must fail. Simple interest had ceased to accrue not only for Nabisco but for all these other taxpayers as well. Section 6622 halted the accrual of simple interest and initiated the imposition of compound interest. Hence, for Nabisco as well as the other taxpayers, interest "was accruing" after December 31, 1982, by operation of the statute.

Nabisco alternatively argues that even if its case cannot be factually distinguished from *Gannet, Cohn* and *Purer,* the opinions of the second, ninth and federal circuits are due only limited deference because they are supported by scant and incorrect analysis. After conducting an in-depth analysis of its own, however, this court reaches the same conclusion as these other courts.

## IX. CONCLUSION

For the foregoing reasons the district court's order granting the government's summary judgment and denying the summary judgment of Nabisco is AFFIRMED.