12 F.3d 1008
 62 USLW 2437, Bankr. L. Rep. P 75,698
 In re Teresa Jo HOGGLE, Debtor.
GREEN TREE ACCEPTANCE, INC., Plaintiff-Appellant,
v.
Teresa Jo HOGGLE, C. Michael Stilson, Defendants-Appellees.
In re Annie White BRYANT, Debtor.
GREEN TREE ACCEPTANCE, INC., Plaintiff-Appellant,
v.
Annie White BRYANT and C. Michael Stilson, as trustee of the
estate of debtor, Defendants-Appellees.
In re Kenneth M. SHELTON and Pamela Shelton, Debtors.
GREEN TREE ACCEPTANCE, INC., Plaintiff-Appellant,
v.
Kenneth M. SHELTON, Pamela Shelton and C. Michael Stilson,
as trustee of the estate of debtors, Defendants-Appellees.
 No. 92-6952.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 11, 1994.
 
 Michael L. Hall, William S. Hereford, Burr and Forman, Birmingham, AL, for appellants.
 George M. Ritchey, Ritchey & Ritchey, P.A., Birmingham, AL, for Leader Fed. Bank.
 Melinda Murphy Dionne, Schoel, Ogle, Benton & Centeno, Birmingham, AL, for C. Michael Stilson.
 Claude M. Burns, Jr., Tuscaloosa, AL, for Annie White Bryant.
 E. Calhoun Wilson, Tuscaloosa, AL, for K.M. Shelton and P. Shelton.
 Darryl C. Hardin, Tuscaloosa, AL, for Teresa Jo Hoggle.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before ANDERSON and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 BACKGROUND
 
 1
 This appeal arises from the order of the United States District Court for the Northern District of Alabama entered in three consolidated cases affirming final orders of the United States Bankruptcy Court for the Northern District of Alabama, Western Division which confirmed the debtors' modified Chapter 13 plans and denied the appellant's motion for relief from the automatic stay provisions of 11 U.S.C. Sec. 362. Teresa Jo Hoggle, Annie White Bryant, and Kenneth and Pamela Shelton (collectively "Debtors"), each commenced separate voluntary cases under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama, Western Division. The Debtors live in mobile homes purchased with financing from Green Tree Acceptance, Inc. ("Green Tree"). When the Debtors filed their respective Chapter 13 petitions, each was past due on payments to Green Tree. At the time of their respective filings, each Debtor proposed, pursuant to 11 U.S.C. Sec. 1322(b)(5), to cure the then past due payments. Green Tree filed proofs of claim in each case. The bankruptcy court in confirming the Chapter 13 plans expressly provided in its orders that the debt to Green Tree was a long term debt being maintained pursuant to Sec. 1322(b)(5).
 
 
 2
 After confirmation, each Debtor failed to make a payment in accordance with the plan. Green Tree filed motions for relief from the automatic stay in each case due to the defaults. The bankruptcy court, in denying Green Tree's motions, modified the Debtors' respective confirmed Chapter 13 plans to provide for the cure of the postconfirmation arrearages. Green Tree appealed the bankruptcy court's orders, and the district court affirmed.
 
 
 3
 This appeal raises solely a question of law: whether the district court has authority to modify a confirmed Chapter 13 plan to allow the Debtor to cure a postconfirmation default with reference to a secured claim on the Debtor's house.[1] We conclude that the district court has such authority.
 
 DISCUSSION
 
 4
 In addressing the legal issue presented, we review the determinations of the bankruptcy and district courts de novo. In re Empire for Him, Inc., 1 F.3d 1156, 1159 (11th Cir.1993). Section 1322(b) of the Bankruptcy Code outlines the permissible contents of a plan, providing in pertinent part:
 
 
 5
 (b) subject to subsections (a) and (c) of this section, the plan may--
 
 
 6
 . . . . .
 
 
 7
 (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
 
 
 8
 (3) provide for the curing or waiving of any default;
 
 
 9
 . . . . .
 
 
 10
 (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.
 
 
 11
 11 U.S.C. Sec. 1322 (emphasis supplied).
 
 
 12
 Under 11 U.S.C. Sec. 1329,[2] the Debtor may modify a Chapter 13 plan at any time after it is confirmed, provided that the plan, as modified, conforms to the requirements of Sec. 1322. Green Tree contends that sections 1322 and 1329 foreclose modification of a plan to permit cure of postconfirmation defaults. Green Tree argues that because Sec. 1329 requires adherence to the requirements of Sec. 1322(b), describing what a plan at confirmation may include, a modified plan could not provide for the cure of postconfirmation defaults because an original plan could not so provide. We disagree.
 
 
 13
 In construing sections 1322 and 1329, we turn first to the text of the statutes to determine their plain meaning. Rules of statutory construction dictate that the plain meaning is conclusive, "except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Section 1322(b)(2) authorizes debtors to modify the rights of secured claim holders, but it provides protection for home mortgage lenders by creating a specific "no modification" exception for holders of claims secured only by a lien on the debtor's principal residence. However, notwithstanding Sec. 1322(b)(2)'s prohibition against modifications of the rights of home mortgage lenders, Sec. 1322(b)(5) expressly authorizes plans to provide for the timely curing of any default and maintenance of payments during the life of the plan. Section 1322(b)(5) clearly states that a plan may provide for the curing of any default. Congress could have easily inserted the word prepetition to modify default but failed to do so. The omission is significant. The plain meaning of Sec. 1322(b)(5) permits cure of any default whether occurring prior to the filing of the petition or subsequent to confirmation of the plan.[3] Thus, Sec. 1322(b)(5) would permit cure of postconfirmation defaults.
 
 
 14
 Moreover, we believe that this result is consistent with legislative intent. Chapter 13's overall policy is to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 118 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 141 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787. The flexibility permitted in the formulation of Chapter 13 plans represents a central element in the implementation of the Congressional goal to encourage expanded use of Chapter 13. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 117-18 (1977). A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13. Under prior law, a Chapter XIII plan could not provide protection to the debtor's home. As a result, courts evolved a solution, granting injunctions against foreclosure on mortgages during the pendency of Chapter XIII cases where foreclosure would defeat the purposes of the plan, and allowing debtors to cure defaults on their mortgages while maintaining current payments. See In re Garrett, 203 F.Supp. 459 (N.D.Ala.1962). Section 1322(b)(5) was intended to codify the practice under which foreclosure was enjoined during the pendency of a Chapter XIII, with the debtor given a reasonable time to cure defaults. 5 Collier on Bankruptcy, p 1322.09, at 1322-25 (15th Ed.1993). Accordingly, permitting cure of postconfirmation defaults best accords with Congressional intent to permit homeowners to utilize its flexible provisions for debt relief without sacrificing their homes.
 
 
 15
 Legislative history accompanying Sec. 1322(b)(5) specifies that a plan may "provide for the curing [of] any default" on long-term debt, such as mortgage debt. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 429 (1977). The Senate Report likewise states that under Sec. 1322(b)(5), a Chapter 13 plan may cure "any default." S.Rep. No. 95-989, 95th Cong., 2d Sess. 141 (1978). With respect to Sec. 1322(b)(3), an analogous section which provides generally for curing defaults, the legislative history unambiguously provides that a plan may provide for the curing or waiving of any default. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 429 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 141 (1978).
 
 
 16
 The legislative history accompanying Sec. 1329 also supports our interpretation. Congress designed Sec. 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation. The House Report suggests that modification is permissible where problems such as a "natural disaster, a long-term layoff, or family illness or accidents with attendant medical bills" prevent compliance with the original plan. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 125 (1977). Fueling the creation of flexible modification provisions was the simple recognition that "[t]he problems which caused financial distress to begin with, ... do not magically disappear on the filing of a petition under chapter XIII." S.Rep. No. 95-989, 95th Cong., 2d Sess. 12 (1978).
 
 
 17
 Thus, the general legislative intent surrounding Chapter 13 as well as specific legislative history relating to Sec. 1322(b)(5) and Sec. 1329 suggest that defaults, either preconfirmation or postconfirmation, may be cured under appropriate circumstances.
 
 
 18
 Green Tree's primary argument is in two steps. First, Green Tree argues that Sec. 1329 permits modification of a plan only if the modification involves a provision which would have been permissible for an original plan under Sec. 1322. The second step of the argument is that Sec. 1322 would not permit in an original plan a provision for curing postconfirmation defaults, because an original plan logically could not provide for curing postconfirmation defaults. We reject Green Tree's argument. We see no logical reason why an original plan could not provide for curing of postconfirmation defaults. For example, we see no reason why an original plan could not state that failure to pay on the default date in a mortgage--that payments be made on or before the first of the month--could be cured by payment within five days. Such a provision would seem to satisfy both requirements of Sec. 1322(b)(5)--cure of the default within a reasonable time and maintenance of payments. Green Tree's contrary interpretation of the statutory scheme would result in a rigid default rule under which a payment tendered one day late would result in an immediate, incurable default. Such rigidity runs counter to Chapter 13's inherent flexibility and the Chapter's purpose to permit expanded use by homeowners. Thus, we reject Green Tree's argument that Sec. 1329 erects a bar to curing postconfirmation defaults.
 
 
 19
 Green Tree also argues that such a provision in an original plan, permitting in effect an anticipatory modification to cure a postconfirmation default, would violate Sec. 1322(b)(5)'s dual requirements that every cure be effected within a "reasonable time" and constitute a "maintenance of payments."[4] This argument is misplaced. Only a crabbed reading of Sec. 1322(b)(5) could suggest that a plan which permitted a cure within five days of default would fail to satisfy the statute's "reasonable time" requirement. Neither would such a provision violate Sec. 1322(b)(5)'s mandate that there be a "maintenance of payments." Reading the statutory scheme to permit the cure of any defaults, even those occurring postconfirmation, falls within the letter and spirit of the statutory scheme, according the flexibility Congress intended for homeowners in proposing and modifying their Chapter 13 plans.
 
 
 20
 This solution does not, as Green Tree urges, deprive the home lender of protection. The Bankruptcy Court possesses ample powers to prevent successive or abusive attempted modifications. See, e.g., 11 U.S.C. Sec. 105(a). Further, each modification must comply with the requirements outlined in Sec. 1329, including adherence to Sec. 1322(b)(5). Therefore, in each instance where the debtor proposes a postconfirmation modification, a judicial inquiry should be undertaken to determine whether a proposed modification to cure a default will comport with Sec. 1322(b)(5)'s requirements that such a cure be effected within a reasonable time and simultaneously maintain payments on the long term loan.
 
 CONCLUSION
 
 21
 Accordingly, we conclude that a confirmed Chapter 13 plan may be modified to allow the Debtor to cure a postconfirmation default pursuant to Sec. 1322(b)(5) with the postconfirmation arrearage to be paid under the modified plan. The judgments of the bankruptcy court and the district court are
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Appellant at oral argument has expressly disavowed any claim that the bankruptcy court, although having authority, abused its discretion in approving the cures of the defaults. Thus, for purposes of this decision, we need not address whether an abuse of discretion occurred. For this reason, and because the facts are undisputed, we need not develop the particular circumstances surrounding each Debtor's case. See note 4, infra
 
 
 [2]
 In pertinent part, Sec. 1329 provides:
 (a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments;
 (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section. (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
 11 U.S.C. Sec. 1329.
 
 
 [3]
 The leading treatise on bankruptcy provides that "[a]lthough section 1322(b)(5) is not limited to secured or residential loans, its most common use by far is to cure defaults on residential mortgages. It may be utilized to cure postpetition defaults as well as prepetition defaults." 5 Collier on Bankruptcy, p 1322.09, at 1322-19 (15th Ed.1993)
 
 
 [4]
 Green Tree does not contend that the particular modifications in the instant case constitute an abuse of discretion. Nor does Green Tree argue that the amortization scheme approved in this case--the missed postconfirmation payment was amortized over the balance of the term of the plan--constituted a waiver of a payment and thus failed to satisfy the required "maintenance of payments." Rather, Green Tree argues that in no case could a cure of a postconfirmation default satisfy Sec. 1322(b)(5)'s "maintenance of payments" and "reasonable time" requirements. Thus, we do not address the issue of whether the district court abused its discretion in approving the instant modification. Nor do we address the issue of whether the "maintenance of payments" requirement is satisfied by allowing a payment to be deferred and amortized over the balance of the term of the plan; that issue was not fairly presented either in the district court or on appeal