United States Court of Appeals,

Eleventh Circuit.

No. 94-2496.

E. Frank GRISWOLD, III, aka Frank Griswold, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Aug. 4, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-565-CIV-t-23-A), Charles R. Wilson, Judge.

Before BIRCH and DUBINA, Circuit Judges, and JOHNSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

In this appeal, we decide the first impression issue of the requirements for the Internal Revenue Service ("IRS") to release a federal tax lien pursuant to Internal Revenue Code ("I.R.C.") § 6325,[1] and thereby avoid liability for damages pursuant to I.R.C. § 7432.[2] The district court found that, to release a federal tax

---

[1] I.R.C. § 6325 governs the release of federal tax liens:

> **(a) Release of lien.**—Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which—
>
> **(1) Liability satisfied or unenforceable.**—The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable....

Id.

[2] I.R.C. § 7432 waives the government's sovereign immunity for private causes of action for civil damages arising from the IRS's failure to release a lien. The statute provides:

lien, the IRS must file a certificate of release for each notice of federal tax lien filed against a taxpayer, original or refiled, but denied the taxpayer's claim for damages because the IRS's failure to file a certificate of release was neither knowing nor negligent. We REVERSE in part, AFFIRM in part, and REMAND to the district court for proceedings consistent with this opinion.

## I. BACKGROUND

The IRS assessed responsible person penalties against plaintiff-appellant E. Frank Griswold III for failure to pay certain taxes related to two of his businesses during the first, second and third quarters of 1979, the first quarter of 1980, the fourth quarter of 1981, the first, second, third and fourth quarters of 1982, and the first quarter of 1983. The IRS's assessments resulted in liens against Griswold's property. *See* I.R.C. §§ 6321-22. Between 1984 and 1989, the IRS filed a total of seven, original or refiled, notices of federal tax lien against

---

**(a) In general.**—If any officer or employee of the Internal Revenue Service *knowingly,* or by reason of *negligence,* fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

....

**(e) Notice of failure to release lien.**—The Secretary shall by regulation prescribe reasonable procedures for a taxpayer to notify the Secretary of the failure to release a lien under section 6325 on property of the taxpayer.

*Id.*

Griswold relating to these liens.[3]  The IRS filed four notices of federal tax lien against Griswold in Hillsborough County, Florida, for liens arising from the tax periods ending December 31, 1979, March 31, 1980, and March 31, 1983.[4]  The IRS filed two notices of federal tax lien in Rutherford County, Tennessee, and one notice of federal tax lien in Maricopa County, Arizona.  *See* Appendix A. Several of the notices of federal tax lien were "refiled notices." For example, Notice No. 4, *see* Appendix A, was refiled on July 14, 1989, to maintain priority over purchasers, holders of security interests, mechanic's lienors, and judgment creditors.  *See* I.R.C. §§ 6323(g);  Treas.Reg. §§ 301.6323(g)-1;  Internal Revenue Service Manual ("IRS Manual") § 535(11).1 (Apr. 29, 1992) ("When the collection period has been extended, it is necessary to refile the notice of lien to maintain the continuity of priority established by the original filing.");  14 J. Mertens, Law of Federal Income Taxation § 54A.08 (1987) (hereinafter "Mertens");  *see also* R1-17-Exhs. F, G, H;  Appendix A:  Notice Nos. 3, 4 & 6.

In 1991, Griswold and the IRS entered into a settlement agreement for the payment of the underlying tax obligations and, on March 10, 1992, Griswold paid the IRS in satisfaction of this

---

[3]The parties, reflecting the language of the statutes and regulations, refer to "filing" of the notices of federal tax lien and of the certificates of release.  As is common in real estate transactions, we will often refer to "filing" as "recording"; these terms will be used interchangeably throughout this opinion.

[4]Interestingly, one of the liens filed against Griswold was for an assessment from the tax period ending December 31, 1979. Nowhere in the settlement agreement or in the materials submitted to us is it stated that an assessment was made against Griswold for the fourth quarter of 1979.

agreement. On March 13, 1992, the IRS office coordinating Griswold's settlement instructed the IRS's District Counsel for Hillsborough County, Florida, that all liens against Griswold must be released immediately. Additionally, the office informed and instructed the District Counsel that "multiple tax liens have been filed in three locations: Murfreesboro, TN[,] Tempe, AZ, and Tampa[,] FL. Please make sure that all liens relating to the above-referenced liabilities are released." R1-1-Exh. D-1.

On March 30, 1992, the IRS filed four certificates of release on IRS Form 668(Z) in Hillsborough County, Florida. *See* Appendix B. Each of the certificates of release corresponds precisely to a notice of federal tax lien filed, with one exception. *Compare* R1-17-Exh. F *and* Appendix A: Notice No. 3, *with* R1-17-Exh. E-1 *and* Appendix B: Release No. 3. Release No. 3 neither cross-referenced a recording book or page number for a corresponding notice of federal tax lien nor included a date of filing for an original or refiled notice. Moreover, the amount listed on Release No. 3 matched only the amount of a lien apparently already released in Release No. 2(b); the amount did not match the amount listed in Notice No. 3, the refiled notice of federal tax lien which remained of record after March 30, 1992. [5] No certificate of release

---

[5]In its original order, the district court erred in concluding that this lien had been released. *See Griswold v. United States,* 73 A.F.T.R.2d 94-1379, 94-1381, 1994 WL 245223 (M.D.Fla.1994), *reconsideration denied,* 73 A.F.T.R.2d 94-1936, 1994 WL 264644 (M.D.Fla.1994). The district court misread the record at R1-17-Exh. J. Those records give notice of what has been filed during the relevant time period, not of what remains of record. Although the district court conceded its error upon Griswold's motion for reconsideration, the court dismissed the effect of that error as harmless. *Griswold,* 73 A.F.T.R.2d at 94-1937.

corresponded to Notice No. 3.

Griswold repeatedly requested the IRS to issue a certificate of release corresponding to Notice No. 3, one which referred to the recording book and page number of Notice No. 3. For over eighteen months from the date of settlement and for approximately six months from the date Griswold filed suit, the IRS failed to issue a certificate of release referencing this notice specifically. Further, corresponding certificates of release to the three notices of federal tax lien filed in Rutherford County and in Maricopa County were neither issued nor recorded within thirty days from the date Griswold satisfied the underlying tax obligations.

Griswold requested administrative relief from the IRS for damages incurred as a result of the IRS's failure to release Notice No. 3 for approximately eighteen months.[6] It is unclear from the record in this case whether Griswold also requested damages resulting from the failure to release the liens in Maricopa County and in Rutherford County. The IRS did not respond to Griswold's

---

[6]Griswold apparently lost a business opportunity as a result of Notice No. 3's remaining of record. The president of Paks, Inc., with whom Griswold had engaged in business negotiations, declined to participate in the deal because of the IRS liens. He wrote:

> As we advised, regardless of the documentation you have presented, which indicates you have satisfied your liabilities with the Internal Revenue Service; the lien filings that remain active—prohibit us from associating with you.

> Even as you state, the IRS has failed to release some liens in error—or through negligence; such active liens would attach to anything of value.

> Regretfully, for all of us—we had to pass on this.

R1-1-Exh. N.

request; therefore, in April, 1993, Griswold filed the instant action pursuant to I.R.C. § 7432.

Five days prior to scheduled trial, on cross-motions for summary judgment, the district court denied Griswold partial summary judgment and granted the IRS final summary judgment. The district court found that section 6325, the attendant regulations, and the IRS Manual provisions were "confusing or ambiguous." *Griswold v. United States,* 73 A.F.T.R.2d 94-1379, 94-1382, 1994 WL 245223 (M.D.Fla.1994), *reconsideration denied,* 73 A.F.T.R.2d 94-1936, 1994 WL 264644 (M.D.Fla.1994). Nevertheless, the court found it equitable to require the IRS to file with the proper recording office a certificate of release relating to each notice of federal tax lien filed against the taxpayer, whether the notice was original or refiled. *Id.* at 94-1383. The district court then concluded that because this rule was unanticipated by the IRS, the IRS's failure to file the certificate of release relating to Notice No. 3 could be neither knowing nor negligent as required by section 7432. The district court entered judgment for the IRS and denied Griswold's motion for reconsideration. Griswold appealed.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Our review of a district court's grant of summary judgment is plenary, and we independently assess the record. *Real Estate Fin. v. Resolution Trust Corp.,* 950 F.2d 1540, 1543 (11th Cir.1992) (per curiam). Summary judgment is granted properly if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving

party bears the burden of showing that genuine issues of material fact exist, *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *modified on other grounds,* 14 F.3d 583 (11th Cir.1994), and we review the record "in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor," *International Union, UMW v. Jim Walter Resources, Inc.,* 6 F.3d 722, 724 (11th Cir.1993); *accord Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990).

## B. FEDERAL TAX LIENS

"A lien is one of the means authorized by law for the Government to protect its position as a creditor in its effort to enforce collection of taxes." 14 Mertens § 54A.01. This authorization originates from I.R.C. § 6321, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

*Id.* The lien remains an interest against the taxpayer's property until the underlying tax obligation is satisfied or becomes legally unenforceable. I.R.C. § 6322. Once a lien arises, federal law governs the priority of competing liens asserted against a taxpayer's property. *Aquilino v. United States,* 363 U.S. 509, 513-14, 80 S.Ct. 1277, 1280-81, 4 L.Ed.2d 1365 (1960); *Haas v. Internal Revenue Service (In re Haas),* 31 F.3d 1081, 1084 (11th Cir.1994, *cert. denied,* 63 U.S.L.W. 3885, 63 U.S.L.W. 3890, --- U.S. ----, 115 S.Ct. 2578, --- L.Ed.2d ---- (U.S. June 19, 1995) (No. 94-1581). The general rule is "first in time, first in

right." *United States v. City of New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). Congress made exception to that rule when it enacted I.R.C. § 6323. That section of the I.R.C. provides that, unless the government files a notice of federal tax lien with the designated recording office or the district court for the proper jurisdiction, the interests of any purchasers, holders of security interests, mechanic's lienors and judgment lien creditors prime that of the government. I.R.C. § 6323(a); *In re Haas,* 31 F.3d at 1084 ("[S]ection 6323 mandates that notice of the taxing authority's lien "shall be filed' in the public records before it operates as notice effective against any holder of a security interest as that term is defined by section 6323."). Congress thus made the government's interests subject to recording or filing to maintain priority against certain commonly encountered property interests.

Once the underlying tax obligation giving rise to the federal tax lien either has been satisfied or has become legally unenforceable, the IRS is required to release the lien within thirty days. I.R.C. § 6325. On appeal, Griswold contends that the IRS failed to release the lien referenced in Notice No. 3 and the liens filed in Maricopa and Rutherford Counties within the time period allowed; thus, the IRS is liable to him for damages. The IRS asserts that Release No. 3 effectively released the lien described in Notice No. 3, and, alternatively, that Release No. 2(b) released that lien. There are several aspects of certificates of release which we must address to discern whether the IRS, with Release No. 3 or with Release No. 2(b), released the lien described

in Notice No. 3.  We must consider (1) whether the certificate of release must cross-reference the lien or the notice of federal tax lien, (2) what information the certificate of release must contain, and (3) whether the IRS must record the certificate.

C. CERTIFICATES OF RELEASE

The IRS argues that, to be effective, the certificate of release need only identify the specific *lien,* and Griswold contends that the certificate of release must identify the *notice of federal tax lien* which has been filed, if any.  The district court agreed with Griswold and found that, if a notice of federal tax lien has been filed, then the certificate of release must relate to the notice.  "We ... examine the plain meaning of the statute to determine if Congressional intent concerning the issue at hand is so clearly embodied in the text as to eliminate the need for this court to examine the legislative history or agency regulations." *RJR Nabisco, Inc. v. United States,* 955 F.2d 1457, 1461 (11th Cir.1992).  The statute states that:

> the Secretary shall issue a certificate of release of *any lien* imposed with respect to any internal revenue tax not later than 30 days after the day on which ... [t]he Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable.

Section 6325.  The IRS advocates that the plain language of the statute controls;  however, we do not find this language to be unambiguous.  The statutory scheme clearly contemplates the filing of the notice of federal tax lien whenever a lien has arisen, but nothing in the statute addresses how one removes a notice of federal tax lien from the public record in order to release the

government's priority.[7]  Congressional thought on *how* to release a lien is not conveyed.  Therefore, we look to legislative history, the corresponding treasury regulations, and the IRS's own manual.[8]

Our research revealed no legislative history addressing this issue directly.  Congress did indicate, however, that the Federal Tax Lien Act of 1966 was an attempt to bring federal tax lien laws into  line with the Uniform Commercial Code ("U.C.C.").                    [9]

---

[7]We have stated:

> [S]ection 6323 ... operates to protect holders of perfected security interests from unfiled tax liens or so-called "secret liens'....  The filing requirement is critical:  even a holder of a security interest who has actual knowledge of an unfiled tax lien will prevail over the government.

*In re Haas,* 31 F.3d at 1084;  *see id.* at 1084 n. 4.

[8]While the IRS Manual does not have the force of law, *see Anderson v. United States,* 44 F.3d 795, 799 (9th Cir.1995), the manual provisions do constitute persuasive authority as to the IRS's interpretation of the statute and the regulations.

[9]Senate Report No. 1708 on the Federal Tax Lien Act of 1966 stated:

> Since the adoption of the Federal income tax in 1913, the nature of commercial financial transactions has changed appreciably.  Business practices have been substantially revised and, as a result, many new types of secured transactions have been developed.  In an attempt to take into account these changed commercial transactions, and to secure greater uniformity among the several States, a Uniform Commercial Code was promulgated somewhat over 10 years ago by the America Law Institute and the National Conference of Commissioners on Uniform State Laws.  A revised version of this code is already law in over 40 States and could well be adopted by many of the remaining States in the near future.  Under the Commercial Code, priority now is afforded new types of commercial secured creditors not previously protected.
>
> *This bill is in part an attempt to conform the lien provisions of the internal revenue laws to the concepts developed in the Uniform Commercial Code.*  It

Certificates of release are similar to the U.C.C.'s termination statements. Termination statements are filed to put the public on notice that a security interest identified in a financing statement has ended. Financing statements are akin to the notices of federal tax lien filed; they give the names and addresses of the debtor and the secured party, and contain a statement indicating the types or describing the items of collateral. *See* Ala.Code § 7-9-402(1); Fla.Stat. ch. 679.402(1); Ga.Code Ann. § 11-9-402(1). Termination statements must be filed within a certain time period from the end of a secured party's interest in property and must identify the original financing statements by filing number. *See* Ala.Code § 7-9-404(1); Fla.Stat. ch. 679.404(1); Ga.Code Ann. § 11-9-404(1). Congress, however, did not provide precise criteria for a certificate of release as is found in the U.C.C. for termination statements. Because there is no legislative history to "fill[ ] the gaps" concerning references in a certificate of release, we turn next to the federal regulations. *See RJR Nabisco,* 955 F.2d at 1464.

Although the IRS now argues that certificates of release relate to individual liens, Temporary Treasury Regulation 401.6325-

---

represents an effort to adjust the provisions in the internal revenue laws relating to the collection of taxes of delinquent persons to the more recent developments in commercial practice (permitted and protected under State law) and to deal with a multitude of technical problems which have arisen over the past 50 years. The bill represents the culmination of a project initiated approximately 10 years ago by those concerned with the relationship of the tax lien provisions to the interests of other creditors.

S.Rep. No. 1708, 89th Cong., 2d Sess. 1-2 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3722, 3722-23 (emphasis added).

1(e) allows the IRS's district director to forego issuing a certificate of release for each and every lien. [10] Instead, the district director may, and usually will, wait until all liabilities listed on the notice of federal tax lien have been satisfied or have become unenforceable to issue a certificate of release. If the taxpayer would like to obtain the release of a lien that is described in a notice of federal tax lien listing multiple liens, and the liability underlying that lien is either satisfied or is legally unenforceable, then the district director must issue a certificate of release upon request by the taxpayer. [11]

---

[10] This regulation provides:

> (e) *Notice of a Federal tax lien which lists multiple liabilities.* When a notice of Federal tax liens lists multiple tax liabilities, the district director shall issue a certificate of release when *all* of the tax liabilities listed in the notice of Federal tax lien have been fully satisfied or have become legally unenforceable. In addition, if the taxpayer requests that a certificate of release be issued with respect to one or more tax liabilities listed in the notice of Federal tax lien and such liability has been fully satisfied or has become legally unenforceable, the district director shall issue a certificate of release. For example, if a notice of Federal tax lien lists two separate liabilities and one of the liabilities is satisfied, the taxpayer may request the issuance of a certificate of release with respect to the satisfied tax liability and the district director shall issue a release.

Tempt.Treas.Reg. 401.6325-1(e) (emphasis added). Evidently, notices of federal tax liens often list more than one lien.

[11] The IRS, by taking portions of this regulation and a portion of the relevant IRS Manual provisions out of context, *see* Appellee's Brief at 25-26 & n. 4, misrepresented to us that the taxpayer *always* needs to request a certificate of release if the taxpayer desires a certificate of release for a notice of federal tax lien which has been filed. The provisions partially cited, when read in full, require only that the taxpayer make such a request when the underlying tax obligation of one lien listed on a notice of federal tax lien has been satisfied or is

These regulations are internally implemented in the IRS

Manual.  Section 535(14).1 of the manual states:

> (1) Although each assessment listed on a Notice of Lien is a separate lien and a certificate of release could legally be issued when each assessment is satisfied or becomes unenforceable, the general practice will be to issue a certificate of release only after all assessments covered by a notice of lien meet the criteria for release.

> (2) *If a specific request* is received from the taxpayer to issue a release for those modules on the lien which have been satisfied or are unenforceable, the request should be forwarded to SPf or other designated function, to issue a partial release of the lien.

IRS Manual § 535(14).1 (Apr. 29, 1992) (emphasis added).  Further,

Temporary Treasury Regulation 401.6325-1, entitled "Release of

liens" provides that

> [t]he district director shall issue a certificate of release for a *filed notice* of Federal tax lien not later than 30 days after the date on which the district director finds that the entire tax liability listed in such *notice* of Federal tax lien has been fully satisfied ... or has become legally unenforceable.

Temp.Treas.Reg. 401.6325-1(a).  If we were to accept the IRS's

innovative and inconsistent argument that the IRS must file a

separate certificate of release for each lien, then these federal

regulations and the IRS's operating procedures would be

meaningless.

"The IRS's understanding of *the terms of the Code* is entitled

to considerable deference."  *United States v. National Bank of

Commerce,* 472 U.S. 713, 730, 105 S.Ct. 2919, 2929, 86 L.Ed.2d 565

(1985) (emphasis added);  *accord Asencio v. Immigration &

Naturalization Serv.,* 37 F.3d 614, 616 (11th Cir.1994) (per

_____

unenforceable and the notice listing that lien also lists liens
which continue to be valid.

curiam). Hence, we must choose whether to accept the IRS's interpretation as presented to the district court and to us, or the interpretation in the Code of Federal Regulations. In light of the regulations that the IRS itself has enunciated and which have been effective since 1985, we decline to accept the IRS's spurious new arguments as to issuing a certificate of release for each lien. Clearly, the IRS has never implemented that practice.

The IRS acknowledges that to release a lien under section 6325 it must issue a certificate of release identifying the tax liabilities which were satisfied or which had become legally unenforceable. The IRS contends, however, identifying the liabilities consists of providing on the certificate of release the correct taxpayer identification number, the date of assessment and the period of tax liability. It insists that assessment amount or notice recording information is unnecessary. The IRS offers that its responsibility to issue a certificate of release may be fulfilled by filing the certificate of release in the recording office where the notice of federal tax lien is filed.[12]

---

[12]This statement is made by the IRS repeatedly in the record. R1-9-3 (IRS's Memorandum in Support of Motion for Summary Judgment) ("On March 30, 1992, all of the tax liens identified in the four Notices of Federal Tax Lien filed in Hillsborough County were released by the Internal Revenue Service *by virtue of the filing of certificates of release.*" (emphasis added)); R1-9-4 ("Section 6325 requires the United States to release a tax lien within 30 days of the liability having become satisfied or unenforceable as a matter of law. The United States maintains that it satisfied its obligations under Section 6325 by timely filing Certificates of Release of Federal Tax Lien identifying the tax liabilities that had been fully paid."); R1-24-2 (Joint Pretrial Statement) ("3a. *Theory of the United States' Case*[;] The United States maintains that it satisfied its obligations under Section 6325 by timely filing Certificates of Release of Federal Tax Lien identifying the tax liabilities that had been fully paid."); R1-10-Exh. 1-2 (Declaration of

This limited amount of information suggested by the IRS, however, may be insufficient to identify a lien in some instances. In this case, for example, two liens which had the same assessment date and the same period of liability were filed against Griswold in Hillsborough County, Florida, as separate notices of federal tax lien. Notice No. 1, filed in October, 1985, listed an assessment of $12,800.15, and Notice No. 2(c), filed in April, 1986, listed an assessment of $12,580.15. Despite the different assessment amounts, even by the IRS's standards, the liens were indistinguishable.[13]

Furthermore, prior to the expiration of Notice No. 1, the IRS refiled the notice as Notice No. 4. Notice No. 4 specifically referred to Notice No. 1 by time and date of original filing and the book and page number of recording. Notice No. 4 also contained the same assessment amount as the original Notice No. 1. When Griswold satisfied the underlying tax obligation, the IRS issued one certificate of release. This certificate referenced the original notice of federal tax lien, Notice No. 1, by recording information *and* referenced the refiled notice of federal tax lien, Notice No. 4, by serial number. The certificate of release

_____

Toney Altieri) ("[A] tax lien ... is released when a certificate of release Form 668(Z) is filed for the appropriate tax periods."); Appellee's Brief at 7 ("[T]he United States contend[s] that it ... satisfied the requirements of I.R.C. § 6325 by timely filing certificates of release of Federal Tax Liens which identified those tax liabilities which had been satisfied, thereby resulting in the release of the liens.").

[13]Separate certificates of release were filed for each notice, and the certificates listed accordingly the differing assessment amounts. *See* R-1-17-Exhs. C, D, Appendix A: Notice Nos. 1 & 2(c); R1-17-Exhs. C-1, D-1, Appendix B: Release Nos. 1 & 2(c).

included the same assessment amount listed in both Notice No. 1 and Notice No. 4.

The critical lien at issue in this case, the lien identified in Notice No. 2(b), indicated that it must be refiled by October 7, 1987. The IRS apparently refiled the notice of federal tax lien on July 13, 1987, as Notice No. 3, which reflected a higher assessment balance than the original Notice No. 2(b).[14] No other identifying information was contained on Notice No. 3; no matching assessment amounts, no recording information, no serial numbers were found. The liens could be matched conclusively neither by the amounts listed on the liens nor by the recording information of the original notice of federal tax lien. The certificate of release which allegedly released both the refiled Notice No. 3 and the original Notice No. 2(b) contained no date indicating when the original or refiled notice was recorded, although the Form 668(Z) provides a space for that information; it contained a serial number which matched no other notice of federal tax lien on file against Griswold; and it contained no recording information referring to the original or refiled notices.

As demonstrated above, multiple liens can arise against a taxpayer for the same type of tax liability, the same tax period, and the same date of assessment. Thus, unless there is some particular identifying information by which to match the original and refiled notices of federal tax lien and the certificates of

_____

[14]This may be because the IRS's manual provides that the refiled notice of federal tax lien should "reflect the current unpaid balance of assessment." IRS Manual § 535(11).71 (Apr. 29, 1992).

release, no person reviewing the title to Griswold's property could conclude with certainty that the lien had been released. As stated by the IRS, the releases must identify the underlying tax obligations. The purpose of this is to allow one to deduce which assessment or lien had been released. While we do not dictate to the IRS how to ensure that notices of federal tax lien and certificates of release can be matched,[15] without some corresponding information in the original and refiled notice of federal tax lien and in the certificate of release allowing for a match to be made, the lien has not been released.[16] *See* Ala.Code § 7-9-404(1) (requiring termination statements to reference the filing number of the original financing statement); Fla.Stat. ch. 679.404(1) (same); Ga.Code Ann. § 11-9-404(1) (same).

Accordingly, we must determine how this procedure applies to this case and refiled notices of federal tax lien.[17] In Griswold's

_____

[15]*Cf. United States v. Union Cent. Life Ins. Co.,* 368 U.S. 291, 294, 82 S.Ct. 349, 351, 7 L.Ed.2d 294 (1961) ("While § 3672(a)(1) unquestionably requires notice of a federal lien to be filed in a state office when the State authoritatively designates an office for that purpose, the section does not purport to permit the State to prescribe the form or the contents of that notice. Since such an authorization might well result in radically differing forms of federal tax notices for the various States, it would run counter to the principle of uniformity which has long been the accepted practice in the field of federal taxation.").

[16]The use of serial numbers and recording information are two reasonable ways of accomplishing this goal.

[17]Senate Report No. 1708, which preceded enactment of the Federal Tax Lien Act of 1966, unequivocally indicates Congress's purpose behind requiring refiling of the liens. The Senate report states:

> Public notice of the existence of a Federal tax lien is given under present law by the filing of a notice of the lien. As indicated previously, various

case, without refiling, the original Notice No. 2(b) would have become ineffective to retain a priority interest in the property for that lien. As a result of the effects of expiration and of

interests may come ahead of a Federal tax lien if they arise before the filing of notice. Once the filing occurs, under present law the filing remains effective without any refiling of the notice. However, tax liens may expire, not only because the tax liability is satisfied, but also because they become unenforceable as a result of the running of the statute of limitations. Generally, the Federal Government has 6 years from the date of assessment to take action to collect the tax. As a result a potential creditor may well assume that if a notice of Federal Tax lien indicates that the assessment occurred more than 6 years before his search of the records, he may then act safely on the assumption that the Federal tax lien is no longer enforceable. As a result, he may feel secure in accepting the taxpayer's property as good security for the extension of credit. However, the 6-year statute of limitations on the collection of a Federal tax after assessment may be extended by agreement with the taxpayer or where the running of the statute of limitations is suspended such as where the taxpayer is out of the country for at least 6 months.... As a result, it is not unusual for a tax lien to be valid for more than 6 years after it arises.

To remove this potential source of uncertainty for creditors, the bill as passed by the House provides that the [IRS] is to be required to refile its notice of lien in the same office where the original notice is filed.... The failure to refile the tax lien at the appropriate time is not to affect the validity of the lien itself. However, it nullifies the effect of the prior filing of the notice of the tax lien. Any timely refiling of a tax lien, in effect, represents a continuation of the prior filing, but any late refiling of a tax lien, in effect, constitutes a new filing. As a result, in the case of a late refiling, any security interest arising after the prior filing of the tax lien, but before the refiling, obtains a priority to the same extent and under the same conditions as if no tax lien had been filed prior to the time of the late refiling.

S.Rep. No. 1708, 89th Cong., 2d Sess. 12 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3722, 3733. Congress has since extended the statute of limitations to ten years. § 6323(g)(3).

refiling on priority, the only notice of federal tax lien which is critical to the creditor and to the taxpayer is the one giving notice that the lien is still active and that the United States maintains a continued priority interest in the taxpayer's property.[18]  *See supra* note 17.

The IRS, citing its IRS Manual, contends that "only one certificate of release needs to be filed in order to effectively release multiple notices of lien." R1-9-8.  The IRS quotes the IRS Manual provision as follows:  " "The filing of a certificate of release Form 668(Z) shall extinguish the lien and remove all notices thereof from the records.' "  R1-9-7 (quoting IRS Manual § 535(11).8(2) (Apr. 29, 1992)).  In the context of refiled notices of federal tax liens, as this argument is made, the IRS's contention is specious.  Although we begin with the plain language when construing a statute, regulation or rule, "we do not look at one word or one provision in isolation, but rather look to the statutory scheme for clarification and contextual reference." *United States v. McLemore,* 28 F.3d 1160 (11th Cir.1994) (citation omitted).  The *complete* section in the IRS Manual reads:

Release of Refiled Notice of Lien

(1) The Form 668-F, used to refile a lien, is not self-releasing.  When the extended statutory period for collection has expired, a certificate of release must be filed.

---

[18]Notices of federal tax lien will expire without refiling and may be self-releasing.  *See generally* § 6323(g)(1);  R1-17-Exh. D (IRS Form 668(Y)) (**"IMPORTANT RELEASE INFORMATION—**With respect to *each* assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a)."  (emphasis added)).

(2) The filing of a certificate of release Form 668(Z) shall extinguish the lien and remove all notices thereof from the records, i.e., a certificate of release issued on Form 668(Z) will release the same assessment shown on the Form 668(Y).[19]

IRS Manual 535(11).8. Section 5717.6(1) of the IRS Manual, also entitled "Release of Refiled Notice of Lien," states: "[t]he filing of a certificate of release (Part 3 of Form 668-F) will also release the same assessment shown on the *original* lien. Only the one document is required." IRS Manual § 5717.6(1) (Feb. 11, 1994) (emphasis added). The IRS Manual clearly contemplates that if the certificate of release refers to the *refiled* notice of federal tax lien, then all previous notices of federal tax lien and the obligations underlying them are released. We disagree with the assertion that, if a certificate of release is filed for the original notice of federal tax lien, then all subsequent notices filed are released. If an original notice of federal tax lien has been refiled, then a certificate of release *must be issued* for the refiled notice. One certificate of release will be sufficient to release the original and generally expired notices of federal tax lien. With respect to Notice No. 3, no release was filed that adequately identified the lien, the original notice of federal tax lien, or the refiled notice. As a result, the IRS failed to release this lien.

Griswold contends that, in accordance with the IRS's

---

[19]Form 668(Y) is generally used to file original notices of federal tax lien. We note, however, that one of the refiled Griswold notices of federal tax lien is on Form 668(Y) instead of on the regular Form 668-F; yet, the refiling information was inserted by a computer printer on a standard notice of federal tax lien. The remaining refiled notices of federal tax lien, Notice Nos. 3 and 6, were filed on a preprinted Form 668-F.

regulations and its own manual, the IRS must *record* the certificate of release. The IRS argues that it is only required to *issue* a certificate of release rather than to record it. Both parties interpreted the district court's order to require that the IRS actually record the certificates of release. We, however, do not read the district court's judgment so narrowly. In consecutive sentences of its order, the district court parallels "filing" and "issuing." The court stated that

> [a]lthough the Court finds that the IRS must *file* a certificate of release for each notice of federal tax lien, the Court does not find that Defendants are liable pursuant to 26 U.S.C. section 7432. Because of the uncertainty surrounding the issue of whether or not the IRS must *issue* a certificate of release for each notice of federal tax lien or simply for each lien, the Court cannot find that, even if Defendant had failed to release the lien at issue, it did so "knowingly, or by reason of negligence."

*Griswold,* 73 A.F.T.R. at 94-1383 (emphasis added). Although it appears to us that the district court confused the terms "issue" and "file" and nothing more, we engage in statutory construction analysis. We look first to the plain language of section 6325. *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle),* 12 F.3d 1008, 1010 (11th Cir.1994). Section 6325 requires the IRS to "issue" certificates of release when underlying tax liabilities have been satisfied. To "issue" means to send out, put into circulation, distribute or publish. *The Random House Dictionary of the English Language* 1015 (2d ed. 1987). Yet, the IRS cannot publish a certificate of release in just any manner or deliver the certificate of release to just anyone; such a random distribution would contravene the statute's purposes. *See In re Hoggle,* 12 F.3d at 1010 ("Rules of statutory construction dictate that the plain

meaning is conclusive, "except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." ' "  (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982))) (alteration in original).

To avoid the absurd result that the IRS could deliver a certificate of release to any person on the street, we conclude that to *issue* a certificate of release means that if a certificate of release has been filed against the taxpayer, the IRS must either deliver it to the recording office in which the corresponding notice of federal tax lien has been filed or deliver it to the taxpayer.  The taxpayer may then proceed as necessary to file the certificate of release.[20]  If the IRS never filed a notice of

---

[20]IRS Manual § 5717.52 (Feb. 16, 1989) governs the "Disposition of certificate of release."  It states in pertinent part:

> (1) Form 668(z) or Part 3 of Form 668-F will be mailed or presented to the proper recording office.  If the certificate is mailed to the recording office and it is necessary to have a transmittal accompany the certificate of release, Form 3915, Processing Notices and releases of Federal Tax Lien and Other Related Certificates, will be used by checking the applicable blocks on the form.  A self-addressed, indicia clause (postage and fees paid), envelope will also accompany the certificates of release if a receipt is requested.

> (2) In some instances, the taxpayer may insist upon personally recording the release.  In these cases, the fee for filing the certificate of release of lien will not be collected from the taxpayer.  Notice 48 is provided for transmitting certificates to taxpayer.

*Id.*

federal tax lien, then delivery of the certificate of release to the taxpayer is sufficient. Unless the lien is self-releasing, the IRS is required to *issue* the certificate of release only in either of the above manners. *See United States v. Waite, Inc.,* 480 F.Supp. 1235, 1240 (W.D.Pa.1979) ("The lien ... is not released until the certificate is issued.").

Therefore, we hold that, to release a lien, the IRS must issue a certificate of release which sufficiently identifies the underlying tax obligation and lien as well as any notices of federal tax lien filed with respect to that lien so that a person searching title to the property could discover whether a lien currently existed. Insofar as the district court required the IRS to issue certificates of release adequately identifying the lien and any notices of federal tax lien filed, it is affirmed. To the extent that the district court may have required that the IRS record all certificates of release, it is reversed.

D. LIABILITY UNDER I.R.C. SECTION 7432

The district court held that the IRS could not be held liable for damages arising from its failure to issue a certificate of release relating to the refiled notice of federal tax lien, Notice No. 3, because it concluded that the issue was so uncertain that IRS personnel could not have acted knowingly or negligently. The provisions requiring the IRS to act responsibly in identifying and releasing the liens are part of their own regulations and internal procedures and are fully consistent with Congress's general intent to make federal tax lien law coincide with general business practices. There is nothing novel in mandating that the IRS

identify the lien being released and the notice of federal tax lien filed against the property sufficiently. The arguments advanced by the IRS appear to camouflage and compound what may have been a simple mistake. Additionally, we note that, despite the IRS's arguments regarding the taxpayer's request to release the lien,[21] Griswold pursued all possible avenues to have a certificate of release issued in accordance with the IRS's procedures and still a release was not forthcoming until September, 1993. Consistent with our holding herein, we remand to the district court to determine whether the IRS personnel's actions in failing to release this lien in a timely manner were either knowing or negligent.

In its order denying Griswold's motion for reconsideration, the district court also denied Griswold relief with respect to the tardy release of the liens filed in Maricopa County and in Rutherford County. The parties do not dispute that these certificates of release were not issued and the releases effective until well past thirty (30) days after the underlying liabilities had been satisfied. This is prima facie evidence that the IRS violated section 6325. Upon Griswold's motion for reconsideration, the district court apparently found that Griswold abandoned any argument that the IRS was liable for its failure to release the liens in Maricopa County and in Rutherford County in a timely

---

[21]The IRS attempted to argue that Griswold failed to give the IRS proper notice per Temp.Treas.Reg. 401.6325-1(f) to release the liens. The IRS had ample notice of its failure to release the liens and certainly had such knowledge before Griswold finally mailed them a copy of the offending notice of federal tax lien, as allegedly required by the regulation. The IRS's assertion is disingenuous considering that it still took the IRS over 10 months to release the lien after receiving that copy of the notice of federal tax lien.

manner. Such a finding is clearly erroneous. As noted above, however, we cannot discern adequately whether Griswold exhausted his administrative remedies with respect to these liens. This is a prerequisite to maintaining a section 7432 action. I.R.C. § 7432(d)(1). Therefore, we remand to the district court to determine whether Griswold exhausted his administrative remedies and, if so, whether he is entitled to damages.

## III. CONCLUSION

For the foregoing reasons, the district court is AFFIRMED in part and REVERSED in part. We REMAND to the district court to determine the following: (1) whether the IRS's failure to issue a certificate of release properly identifying the refiled notice of federal tax lien, Notice No. 3, was either knowing or negligent, and if so, whether Griswold is entitled to an award of damages, and (2) whether Griswold exhausted his administrative remedies with respect to the tardy release of the liens in Maricopa County and in Rutherford County, and if so, whether he should be awarded damages under section 7432.

## APPENDIX A

CA (95) 3792-1,SIZE-41 PICAS,TYPE-

CA (95) 3792-1,SIZE-41 PICAS,TYPE-

## APPENDIX B

CA (95) 3792-2,SIZE-41 PICAS,TYPE-

CA (95) 3792-2,SIZE-41 PICAS,TYPE-