### JOHN HANCOCK LIFE INSURANCE CO.

v.

### UNITED STATES of America.

Civil Action No. 08–3911.

United States District Court, E.D. Louisiana.

Oct. 14, 2009.

---

James M. Garner, Dorothy S.W. Lawrence, Robert P. Thibeaux, Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC, New Orleans, LA, for John Hancock Life Insurance Company.

Kimberle Elizabeth Dodd, John M. Bilheimer, U.S. Department of Justice, Washington, DC, for United States of America.

### ORDER AND REASONS

JAY C. ZAINEY, District Judge.

Before the Court are **Motions for Summary Judgment** filed by plaintiff John Hancock Life Insurance Co. (**Rec. Doc. 41**) and defendant The United States of America (**Rec. Doc. 40**). The parties have submitted these cross motions in lieu of the bench trial that was set to commence on Monday, July 27, 2009. They have filed stipulations into the record and they agree that no material facts are in dispute. The parties agree that the case is ripe for determination via the present cross motions.

On July 27, 2009, the Court held oral argument on the motions and post-hearing briefs were filed on August 31, 2009. The Court having now considered the evidence of record, the arguments of counsel, and the applicable law, finds for the following reasons that the United States' motion should be GRANTED and John Hancock's motion should be DENIED.

### I. BACKGROUND

This lawsuit arises out of a notice of levy that the IRS served on Capital One Bank. On December 10, 2007, the IRS levied $397,041.85 from three accounts held at Capital One for taxes owed by the Schwegmann Family Trust No. 2. The plaintiff, John Hancock Life Insurance Co. ("Hancock" or "Plaintiff"), contends that the IRS wrongfully levied the monies in those accounts because they were subject to a previously perfected security interest in its favor. The IRS, on the other hand, contends that Hancock had no security interest in the accounts at all.

The events leading up to this dispute began many years ago. In May 1994, the Schwegmann Trust ("Schwegmann") borrowed in excess of $9 million from Hancock and executed several promissory notes to evidence the indebtedness. The notes were secured by an Act of Mortgage ("the Mortgage") on certain immovable commercial property held by Schwegmann. Additional security for the notes was given by a Collateral Assignment of Leases and Rents ("the Assignment") which created a lien against the rents-receivable for the properties covered by the Act of Mortgage.

In addition to the Mortgage, the Assignment, and the notes themselves, an Indenture ("the Indenture") between Schwegmann and Capital One Bank[1] was executed to facilitate the issuance of the notes. The Indenture is a very detailed 22 page document pursuant to which the Capital One Trust Department agrees to serve as the Indenture Trustee. As Trus-

---

1. Hibernia Bank is the predecessor of Capital One so all of the pertinent loan and security documents reference Hibernia Bank. Because Capital One is the successor to Hibernia for all purposes relevant to this lawsuit, the Court will make all references to Capital One even if technically it should be Hibernia.

tee, Capital One was vested with full power to *inter alia* enforce the security documents for the benefit of the note holders and to receive and collect as assignee for the benefit of the note holders under the Assignment, the rents received and to apply those rents to service the debt. (Rec. Doc. 39, Exh. A). The Indenture sets up a mechanism by which funds are received in the form of rents paid by tenants occupying properties owned by Schwegmann or in the form of the proceeds of insurance on those properties. Those funds are then either used to make payments due to the note holders, transferred from one of the three deposit accounts to another, or paid out to Schwegmann.

The three separate deposit accounts that the Indenture required Capital One to maintain on its books were: the Collection Account which was used to receive all rent and lease payments that had been assigned as security for the notes, the Reserve Account which contained those funds (rent revenues) transferred over from the Collection Account that were in excess of that needed to service the debt in any given month,[2] and an Insurance Account which received insurance proceeds from casualty insurers under insurance in place at the time of Hurricane Katrina. Schwegmann defaulted on the notes around October 2005 due to lack of rent payments from the tenants in the aftermath of Hurricane Katrina.[3]

Schwegmann became in arrears with the IRS for its 2004 and 2005 taxes and the IRS eventually assessed the taxes that were the subject of the notice of levy. Pursuant to the IRS notice of levy, Capital One remitted to the IRS the following sums: $30,672.76 from the Collection Account, $322,513.27 from the Reserve Account, and $43,855.82 from the Insurance Account.

Hancock filed this suit against the IRS (the United States) pursuant to 26 U.S.C. § 7426(a)(1). Hancock contends that the IRS levy was wrongful because its interest in the funds held in the deposit accounts was superior to the IRS's federal tax lien. Hancock is seeking return of the levied funds plus interest.

## II. *DISCUSSION*

The statutory provision governing the federal tax lien at issue is found at I.R.C. § 6321 which states in relevant part:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 26 U.S.C.A. § 6321 (West 2002). The lien arises by operation of law at the time that the taxes are assessed and attaches to all property of the delinquent tax payer to the full extent of any tax liability. *Aetna Ins. Co. v. Tex. Thermal Indus., Inc.*, 591 F.2d 1035, 1037 (5th Cir.1979). Federal tax liens are nonconsensual, unlike most security interests that are voluntarily granted by the debtor. *Planned Furniture Promos. v. Benjamin S. Youngblood, Inc.*, 374 F.Supp.2d 1227, 1234 (M.D.Ga.2005). The statute is broadly worded "to reach every interest in property that a taxpayer might have." *Id.* (quoting *U.S. v. Nat'l Bank of Comm.,*

---

2. The Indenture required that all excesses from the Collection Account be transferred to the Reserve Account until such time as a $500,000 balance was attained in the Reserve Account. (Rec. Doc. 39, Exh. A at § 5.2).

3. Most of the Schwegmann properties involved sustained substantial damage in Hurricane Katrina.

472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985)).

■ A § 6321 tax lien has priority over all other claims except those of a narrow class of stakeholders which includes secured creditors. This limitation on the § 6321 lien arises from § 6323 of the Internal Revenue Code, entitled Validity and Priority Against Certain Persons, which states in relevant part:

> The lien imposed by section 6321 shall not be valid as against any purchaser, **holder of a security interest,** mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

26 U.S.C.A. § 6323(a) (West 2002) (emphasis added). The statute defines the term "security interest" as follows:

> [A]ny interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C.A. § 6323(h)(1). Once a federal tax lien arises federal law governs the priority of competing liens asserted against a taxpayer's property and the question of whether a security interest under state law has priority over a federal tax lien. *Planned Furniture,* 374 F.Supp.2d at 1235 (quoting *Griswold v. U.S.,* 59 F.3d 1571, 1575 (11th Cir.1995)); *Hunter's Supply Co. v. U.S.,* No. IP 84–1554–C, 1986 WL 6184 (S.D.Ind. Mar. 25, 1986) (citing *Aquilino v. U.S.,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960)).

In the instant case it is undisputed that the IRS had a valid tax lien against Schwegmann property as of the time that the delinquent taxes were assessed, and it is also undisputed that the funds held at Capital One were the property of Schwegmann at all times. The IRS did not file a notice of federal tax lien before levying the funds in the three Capital One deposit accounts. Thus, if Hancock can establish that it falls within the narrow class of stakeholders enumerated in § 6323(a) with respect to the funds held in the Capital One accounts, *i.e.,* if it is the holder of a security interest, then its interest in the funds will prime the IRS's lien and the levy will have been improper. *See Dupre v. Joe's Riverside Seafood, Inc.,* 578 So.2d 158, 163–64 (La.App. 1st Cir.1991) (discussing burden of proof). Absent compliance with § 6323(a), Hancock cannot prevail against the federal tax lien regardless of what its rights would be under state law.

The IRS takes the position that Hancock's interest in the funds does not fall within the reach of § 6323(a) because Hancock is not the "holder" of whatever security interest was created in the funds.[4] The IRS points out that all of the pertinent security documents grant the security interest in favor of Capital One and not Hancock. The IRS argues that Hancock is assuming, without any basis in the operative documents, logic, or law that it can stand in the shoes of Capital One and exercise all of its rights under the Indenture and the Mortgage.

---

4. The IRS does not concede that Capital One had a "security interest" as that term is defined in I.R.C. § 6323(h)(1) although it does recognize that Capital One may very well have a security interest under state law. Capital One's status is not at issue because Capital One is not a party to this case.

Hancock, on the other hand, contends that it is clearly the "holder" of a security interest in the Capital One funds because it is the party that lent money. Hancock argues that the relationship between Capital One and Hancock was one of agency pursuant to the terms of the Indenture and Mortgage, which vested Capital One will full power to effect and enforce Hancock's rights. Hancock points out that each of the security documents identifies Capital One as the Trustee for the ratable benefit of the note holders and Hancock has always been the sole note holder. Hancock contends that the grant of a special attorney-in-fact or agency status to Capital One does not divest Hancock of its interest in the secured property.

Although § 6323 contains numerous definitions, neither this statute nor the Tax Code defines the term "holder." Treasury Regulations provide that "the holder of a security interest is the person in whose favor there is a security interest." 26 C.F.R. § 301.6323(h)–1(a)(4). Although federal law controls here, the Court notes that state law likewise provides no specific guidance as to an appropriate definition. Assuming that the forgoing Treasury Regulation provides the definition for purposes of § 6323(a) for the term "holder," the definition nonetheless does very little to clarify the term because the question still remains whether "the person in whose favor" the interest is granted is the one in whose *name* the interest is granted or the one who *benefits* from the security interest. It is clearly foreseeable that a security interest could be granted in *favor* of one party but for the *benefit* of another. In fact, that is exactly what transpired in this case.

The notes secured by the Capital One accounts were issued pursuant to the Indenture, to which Schwegmann and Capital One Bank (through its predecessor Hibernia) were the sole parties. The Indenture is the document that maps out the structure of the lending arrangement whereby Schwegmann would issue and sell a note(s) to unnamed parties referred to only as the Note Holder(s). The notes were to be secured by the separately-executed Mortgage and Assignment. (Rec. Doc. 39 Exh. A, Indenture at 1). Pursuant to the Indenture, Capital One Bank obtained a security interest in the mortgaged and assigned property, not for its own personal benefit given that it lent no money, but for the benefit of the registered owners of the notes—the parties who would actually lend the money by purchasing the notes. (*Id.*). The Indenture gave Capital One full power to effect and enforce the security documents and irrevocably appointed Capital One as the agent *of Schwegmann* for the payment, registration, transfer, and exchange of notes, and as special attorney-in-fact for the note holders in accordance with La. R.S. § 9:5302 to act with full power on their behalf to effect and enforce the security documents for their benefit. (Rec. Doc. 39 Exh. A, Indenture § 2.13).

It is important to note that none of the "rights" bestowed upon Capital One under the Indenture were granted by the note holders themselves, who were not parties to the document, although they were clearly intended to be beneficiaries of the arrangement that it created. The note holders were given virtually no "personal" rights to exercise on their own behalf and the sole instance where they could do so was pursuant to § 6.4 of the Indenture. Section 6.4 provides that in the event of default where Capital One has failed to act notwithstanding a request to do so by a majority of the note holders, "then and only then" do the note holders have the right to institute enforcement proceedings on their own. (Rec. Doc. 39 Exh. A § 6.4). At all other times, Capital One was the

sole party with standing to take legal action to enforce the security and the monies held in the accounts were subject to "the sole dominion and control" of Capital One as trustee. (*Id.* §§ 5.1 & 5.2).

Consistent with the arrangement created by the Indenture, the Mortgage was executed by Schwegmann and Capital One with Capital One being specifically named as the mortgagee. (Rec. Doc. 1–3). The Act of Mortgage specifically states that a security interest is being created in favor of Capital One albeit for the benefit of the note holders. (*Id.* at 2). The Assignment contains the same language. (Rec. Doc. 1–5 at 2). As with the Indenture, the note holder(s) is not a party granted any specific rights to exercise on its own behalf. All rights are bestowed on Capital One who exercises those rights for the benefit of the note holders. Consistent with the Indenture, Mortgage, and Assignment, all of the pertinent public record filings that are intended to perfect the security interest as to third parties are in the name of Capital One.

The Indenture, Mortgage, and Assignment all expressly reference the statutory scheme found at La. R.S. §§ 5301 thru 5307, which specifically provides for the structure of the three-way arrangement involved here. Section 5302 of Title 9, entitled Fiduciary as Mortgagee in Trust for Creditors, provides:

> A fiduciary for the holders of the obligations secured by the mortgage may be named in the act as mortgage in trust for the benefit of the creditors. He shall be irrevocably appointed special attorney-in-fact for the holders of the obligations and vested with full power in their behalf to effect and enforce the mortgage for their benefit.

La.Rev.Stat. Ann. § 9:5302 (West 2007). Section 5304, Enforcement of Mortgage, further provides:

> In case of default, the mortgage may be enforced by seizure and sale or otherwise, as the fiduciary shall deem expedient for the protection of the debt. However, the act of mortgage may provide that in the event of default, the fiduciary shall not be obliged to proceed to sell the property unless the holders of a designated portion of the obligations secured shall request the fiduciary to enforce the mortgage and agree to indemnify him against all costs and expenses incurred. The mortgagor may restrict the right of the fiduciary to foreclose or sell in the event of a default.

La.Rev.Stat. Ann. § 9:5304 (West 2007). Thus, Louisiana law allows an obligor to place a security interest in the name of a third-party fiduciary who derives no direct personal benefit from the security interest but who acts for the benefit of the obligee. Such an arrangement makes the notes marketable to investors and because the law specifically allows for such an arrangement neither the debtor nor the obligee need fear that the fiduciary will claim the security interest for his personal benefit notwithstanding that all the pertinent documents and filings name him as the secured party. The Louisiana Supreme Court has held that when a mortgage is executed to a fiduciary trustee in accordance with this scheme, the note holders for whose benefit the mortgage is held have no personal right of action to enforce the mortgage based solely on their status as the secured party. *See Rowe v. La. Agricultural Corp.*, 155 La. 241, 99 So. 206 (1924).

 Every aspect of the Indenture, Mortgage, Assignment, and the Louisiana statutory scheme upon which they are based, compels the conclusion that the security interest was created directly in favor of Capital One as opposed to Hancock or any other note holder. Capital One was

the named recipient of the security interest and the pertinent documents establish that Capital One was the sole party with standing under Louisiana law to enforce the terms of the security agreements or to take any action with respect to the security agreements. The note holders' limited and passive role with respect to the security does not support the conclusion that Hancock was the "holder" of the security interest.

The fact that Capital One received that security interest as a fiduciary for the protection and benefit of another party does not compel a contrary conclusion because Louisiana law specifically provides for the scenario where a fiduciary can hold a security interest for the benefit of another. The identity of the note holders in this arrangement was not important because Capital One acted as fiduciary for the *registered* note holders, (Indenture § 2.10), whoever they might be, and the note holders were always intended to have a passive as opposed to an active role with respect to the security for the loans. Thus, Hancock's contention that Capital One's agency status does not divest Hancock of its interest in the secured property is correct. But what Hancock fails to recognize is that whatever interest it had in the secured property it obtained via contract. And the pertinent contracts in this case establish that Capital One was the "holder" of the security interest, not Hancock.

After Schwegmann defaulted on the notes it entered into a Forbearance Agreement ("the Forbearance") with Hancock in August 2006, and Hancock argues that this document demonstrates that it was in fact the secured party because it refers to Hancock as such. The Forbearance recognizes that an "Event of Default" had occurred under the Indenture because funds in excess of the authorized limit were taken out of the Reserve Account to service the debt

after Hurricane Katrina. (Rec. Doc. 39 Exh. D). In the Forbearance Hancock agreed for a limited time (until October 1, 2006) to grant a temporary forbearance with respect to accelerating the notes and enforcing the security for the debt. (*Id.* at 3–4).

The Forbearance did nothing to change the fact that in accordance with Louisiana law Capital One held the security interest on behalf of the note holders. The Forbearance agreement was important because as owner of 100 percent of the notes Hancock had the express right under the Indenture to require Capital One to enforce the security in light of Schwegmann's default. (Rec. Doc. 39 Exh. A Indenture § 6.1–6.4). Because Hancock was the party waiving its rights it necessarily had to be a party to this document. Hancock's reliance on the Forbearance to demonstrate that it was in fact the secured party is unnecessary. As a note holder, in fact the sole note holder, Hancock is clearly the secured party. But under Louisiana law, the fiduciary holder of the security interest need not be the secured party.

Hancock also argues the definition of a security interest in § 6323(h)(1) requires that the holder have parted with money which Capital One did not do. To the contrary, the federal statute implicitly recognizes that a holder need not be the same person who loaned the money which is why the definition of "security interest" expressly imposes the requirement that the holder have parted with money. Imposing such a requirement does not necessarily imply that the holder is the party who lent money. The Court recognizes that the implication of concluding that Capital One is the holder notwithstanding that it lent no money means that neither Capital One nor Hancock can challenge the IRS's lien under § 6323(a). But that is the unfortunate result that the facts dictate under the

federal scheme when a security interest is held by a fiduciary for the benefit of another party.

Finally, Hancock argues that if Capital One is the holder then it has received a windfall security interest for which it did not pay and has deprived Hancock of its security interest for money of which it did not part all because the term "Note Holder" was used in the documents. This argument ignores the fact that this is not a contest between Capital One and Hancock over who benefits from the security. And as explained above, Louisiana law specifically recognizes that a security interest can be held by a fiduciary for the benefit of another party. Therefore, it does not follow that Capital One receives a windfall by being recognized as the fiduciary "holder" of the security interest at issue, all in accordance with Louisiana law.

Accordingly, and for the foregoing reasons;

IT IS ORDERED that the **Motion for Summary Judgment (Rec. Doc. 41)** filed by plaintiff John Hancock Life Insurance Co. is **DENIED;**

IT IS FURTHER ORDERED that the **Motion for Summary Judgment (Rec. Doc. 40)** filed by and defendant The United States of America is **GRANTED.** Plaintiff's complaint is DISMISSED with prejudice.