T.C. Memo. 2021-3

UNITED STATES TAX COURT

PATRICK S. KENNEDY, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5687-17W.                    Filed January 12, 2021.

Patrick S. Kennedy, pro se.

<u>Jadie T. Woods</u> and <u>Eric R. Skinner</u>, for respondent.

MEMORANDUM OPINION

COPELAND, <u>Judge</u>:  In this case petitioner, Patrick Kennedy, has appealed

pursuant to section 7623(b)(4)[1] three determinations of the Whistleblower Office

(WBO) of the Internal Revenue Service (IRS) that decline to make awards to him.

_____

[1]All section references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure, unless otherwise indicated.

**[\*2]** Mr. Kennedy initially filed a single whistleblower claim with the WBO, but as will be explained in further detail <u>infra</u> the WBO divided his single claim into three distinct claims. For all three claims respondent has moved for summary judgment under Rule 121 asserting that: (1) there is no genuine dispute of material fact; (2) the WBO did not abuse its discretion in denying Mr. Kennedy's claims; and (3) respondent is entitled to summary adjudication. For the reasons stated below we will grant summary judgment to respondent on all three claims.

Background

The following background is derived from the pleadings, the parties' motion papers, and the supporting exhibits attached thereto. We state the background solely for purposes of ruling on the pending motion for summary judgment and not as findings of facts. Mr. Kennedy was a resident of the State of Illinois when his petition was filed.

I.  Mr. Kennedy's Submission to the WBO

On April 3, 2012, the WBO received Form 211, Application for Award for Original Information. In that Form 211 Mr. Kennedy alleges that taxpayers 1, 2,

[*3] 3,[2] and related subsidiaries and affiliates of taxpayer 1[3] owe $150,103,245 in unpaid excise taxes, penalties, and interest.

On April 20, 2012, respondent mailed a letter to Mr. Kennedy confirming receipt of his Form 211 and assigning claim No. 2012-004308 to his claim. Within the WBO, the claim was assigned to Program Analyst Katherine Onken. On May 24, 2012, Ms. Onken hosted a conference call with a number of IRS personnel to determine which IRS operating division would review the claim. The participants to that conference call determined that the claim should be assigned to the IRS Large Businesses & International (LB&I) operating division, particularly the team responsible for entities in the communications, technology, and media industries (LB&I CTM).

II.     LB&I's Consideration of Mr. Kennedy's Claim

Thereafter, on June 1, 2012, Ms. Onken transmitted the claim file to LB&I CTM. Attached to that claim file was a memorandum from Ms. Onken to the

---

[2]Nonparty taxpayers are referred to in generic terms to protect their identities. See Rule 345(b).

[3]Three facts are important to our decision in this case. First, the target taxpayers are all related to each other. Second, a predecessor entity to taxpayer 1 declared bankruptcy almost 10 years before the WBO received Mr. Kennedy's Form 211. Third, in connection with that bankruptcy the IRS, in settlement of its proof of claim, received over $24 million.

[*4] LB&I CTM director.  The memorandum states that the WBO "has completed an initial analysis of the claim and has determined that it appears to meet the requirements to be processed as a claim under * * * [section 7623(b)]."  Following Ms. Onken's transmission of the claim file to LB&I CTM, the claim went through a taint review[4] before being assigned to an LB&I CTM team for evaluation in August 2012.

Between September 26, 2012, and October 1, 2012, LB&I CTM and the IRS Tax Exempt and Government Entities operating division, particularly the subdivision for Exempt Organizations (TEGE-EO), discussed that the claim involved tax-exempt voluntary employees' beneficiary association (VEBA) trusts, and that LB&I CTM did not have anyone who could evaluate excise tax claims involving a VEBA.  The WBO was informed of this development.

III.   Transferring Mr. Kennedy's Claim to TEGE-EO

As a result of LB&I CTM's reevaluation, on or about October 2, 2012, Ms. Onken hosted another conference call to discuss the transfer of Mr. Kennedy's claim from LB&I CTM to TEGE-EO.  Originally, the parties to the first conference call decided to assign the case to LB&I because taxpayer 1 fell under

---

[4]A taint review refers to a review of the claim file for "information that was illegally obtained by the whistleblower, or subject to a valid claim of privilege." Internal Revenue Manual (IRM) pt. 25.2.1.4.3(3) (Jan. 11, 2018).

[*5] its jurisdiction. However, after the LB&I CTM team reviewed the allegations, they concluded that the claim would be better suited with TEGE-EO since the issues were interrelated and involved tax-exempt entities. During this second conference call TEGE-EO pointed out an issue with the claim; namely, that TEGE-EO "cannot work on returns that are not EO returns and has a concern because the [claim] number is currently assigned to a Form 1120 [U.S. Corporation Income Tax Return]." To resolve this issue, Ms. Onken agreed to separate the tax-exempt entities from the for-profit entity by assigning a different claim number to each entity.

Accordingly, taxpayer 2 was assigned No. 2013-001106, taxpayer 3 was assigned claim No. 2013-001107, and taxpayer 1 became the only entity that was assigned to claim No. 2012-004308. Taxpayers 2 and 3 were assigned to TEGE-EO (claims), while taxpayer 1 was placed in suspense. To accomplish this reassignment, the LB&I CTM team filled out Form 11369, Confidential Evaluation Report on Claim for Award. That Form 11369 is largely blank save for page 3, which transfers the claim to TEGE-EO because "[t]he issues identified in the claim are not related to income tax." Because of this transfer and Ms. Onken's pending retirement from the IRS, the WBO program analyst assigned to supervise the claims changed from Ms. Onken to Miriam Massey.

**[*6]** IV.     <u>TEGE-EO's Consideration of Mr. Kennedy's Claims</u>

At TEGE-EO the claims were subjected to additional taint reviews. After the taint reviews for both claims were completed, the claims were sent to a classifier with TEGE-EO classifications. Initially, both claims were considered for examination; but because taxpayer 2 was a tax-exempt entity that had been terminated since December 1999 with its last return filed in 1994, TEGE-EO determined not to examine taxpayer 2. Only the claim against taxpayer 3 was selected for examination, and no further action was to be taken with respect to the claim against taxpayer 2.

The claim against taxpayer 3 was assigned to Revenue Agent Collette Dominick in a TEGE-EO group for examination. She received the assignment on May 1, 2013, and examined taxpayer 3's return until June 22, 2015. While she was examining the return, the WBO analyst assigned to supervise the claims changed from Ms. Massey to Senior Program Management Analyst Steven Mitzel.

On or about January 16, 2015, Ms. Dominick advised Mr. Mitzel that she was ready to close the claims, and Mr. Mitzel directed her to send him the Forms 11369 and the case records. After reviewing the documentation, Mr. Mitzel concluded that the Forms 11369 did not address the related excise tax issue against taxpayer 1. He requested that the forms address that issue "as LB&I was

[*7] not going to do so" and noted that he was "not in a position to send * * * [the claims] back."

On June 22, 2015, Ms. Dominick submitted two Forms 11369 to the WBO's electronic tracking system. The first form, relating to taxpayer 3, included a narrative which stated: "The examination of * * * [taxpayer 3's return] was conducted by correspondence * * * [and] the examination is being closed as a no change and the Form 990 [Return of Organization Exempt from Income Tax] is accepted as filed." The second form, relating to taxpayer 2, included a narrative which stated: "This entity was not audited * * *. It was terminated as of December 1999." Both forms were approved on June 24, 2015, by Ms. Dominick's manager.

V.     The Claim Against Taxpayer 1

Approximately nine months later, on April 6, 2016, the WBO analyst assigned to supervise all three claims changed from Mr. Mitzel to Senior Program Analyst Joel Calandreli. Five months later on September 7, 2016, Mr. Calandreli contacted TEGE-EO to confirm that taxpayer 3's return had been examined and no change resulted from the examination. Mr. Calandreli also requested the Form 11369 for taxpayer 1. TEGE-EO confirmed that, as to taxpayer 3, there was an examination that resulted in acceptance of taxpayer 3's Form 990 as filed with no

[*8] adjustments. After much back and forth related to the status of the claim against taxpayer 1, on September 28, 2016, TEGE-EO Exam Closing Agreement Coordinator Joyce Hoover signed a Form 11369 for the claim against taxpayer 1. Question 12 on the form asks: "Was this claim surveyed or declined?" Ms. Hoover checked "Yes." And in the narrative field she entered: "[Taxpayer 1] is a taxable entity and was not audited by * * * [TEGE-EO]." Further, the box "Yes" was checked for question 12, part A, which asks: "Did the whistleblower information result in opening any other investigation with respect to the taxpayer(s) identified on this Form 11369 or any other taxpayers where an issue unrelated to the whistleblower issue(s) was discovered." Besides checking "Yes" to the above question, Ms. Hoover explained that "[r]elated entity, * * * [taxpayer 3], was examined and the result was a no change audit." That same day, Ms. Hoover's manager approved the Form 11369 by signing it. On October 3, 2016, Mr. Calandreli received the signed Form 11369 from Ms. Hoover.

VI.    Closing All Three Claims

On December 14, 2016, Mr. Calandreli prepared an Award Recommendation Memorandum (ARM) for the WBO director. The ARM recommended that the WBO deny the claims because "the IRS took no action based on the information provided by the whistleblower" on the claims against

**[*9]** taxpayers 1 and 2, and the claim against taxpayer 3 "resulted in a no change." That same day Mr. Calandreli mailed a preliminary denial letter to Mr. Kennedy denying all three claims. For the claims against taxpayers 1 and 2, the letter stated: "The * * * claims [have] been recommended for denial because the IRS took no action based on the information that you provided. Common reasons for declining to act on information include statute of limitation issues, limited resources, or a conclusion that there are no material issues." For the claim against taxpayer 3, the letter stated a different explanation: "The * * * claim has been recommended for denial because the information you provided was reviewed as part of an examination, but the examination resulted in no change." On February 1, 2017, Mr. Calandreli mailed a final determination letter to Mr. Kennedy denying his claims for award on all three claim numbers for the same reasons provided in the preliminary denial letter.

VII. Tax Court Proceedings

Mr. Kennedy timely petitioned this Court for review of the WBO's decision as to all target taxpayers. Respondent has filed a motion for summary judgment as to all three claims, to which Mr. Kennedy objects.

**[\*10]**                                   <u>Discussion</u>

I.      <u>Summary Judgment</u>

Summary judgment is intended to expedite litigation and avoid unnecessary

and expensive trials. <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 116 T.C. 73, 74

(2001). Generally, we may grant summary judgment when there is no genuine

dispute as to any material fact and a decision may be rendered as a matter of law.

Rule 121(b); <u>see also</u> <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520

(1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). However, we have recently observed

that

> this summary judgment standard is not generally apt where we must
> confine ourselves to the administrative record to decide whether there
> has been an abuse of discretion. * * * [I]n a "record rule"
> whistleblower case there will not be a trial on the merits. In such a
> case involving review of final agency action under the * * *
> [Administrative Procedure Act], summary judgment serves as a
> mechanism for deciding, as a matter of law, whether the agency
> action is supported by the administrative record and is not arbitrary,
> capricious, an abuse of discretion, or otherwise not in accordance
> with law. * * * [<u>Van Bemmelen v. Commissioner</u>, 155 T.C. ___, ___
> (slip op. at 25-26) (Aug. 27, 2020).]

In deciding whether to grant summary judgment, we view the factual materials and

inferences drawn from them in the light most favorable to the nonmoving party,

Mr. Kennedy in this case. <u>See</u> <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. at 520

(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).

**[*11]** II.   Scope and Standard of Review

In whistleblower cases our scope of review is limited to the administrative record at hand with limited exceptions not applicable here.  <u>Kasper v. Commissioner</u>, 150 T.C. 8, 20-21 (2018).  Here the administrative record was provided as one of the numerous exhibits to respondent's motion for summary judgment.  Because the exhibits contained identifying information related to the target taxpayers, the exhibits were ordered sealed by the Court.  <u>See</u> Rules 27(a), (c), 345(b).

Our standard of review in whistleblower cases is abuse of discretion. <u>Kasper v. Commissioner</u>, 150 T.C. at 21-23.  This means that we will not substitute our judgment for the WBO's but will decide whether the agency's decision was "based on an erroneous view of the law or a clearly erroneous assessment of the facts."  <u>Id.</u> at 23 (quoting <u>Fargo v. Commissioner</u>, 447 F.3d 706, 709 (9th Cir. 2006), <u>aff'g</u> T.C. Memo. 2004-13).

III.   Analysis

   A.   Section 7623

Section 7623 allows the IRS to give an award for information that the IRS uses to collect tax or bring to trial persons guilty of violating internal revenue laws.  The section provides for both discretionary and mandatory awards.

**[*12]** Discretionary awards are paid under section 7623(a); whether an award is paid and the amount of such an award is entirely within the WBO's discretion. See sec. 301.7623-1(a), Proced. & Admin. Regs.  However, if the proceeds[5] in dispute exceed $2 million; and, in the case of an individual taxpayer, gross income exceeds $200,000 for any taxable year, then an award between 15% and 30% of collected proceeds <u>must</u> be paid to the whistleblower.  See sec. 7623(b)(1), (5).[6] Additionally, for a whistleblower to be eligible to receive an award under section 7623(b), two basic requirements must be met:  (1) the IRS, on the basis of information the whistleblower provided, must bring an administrative or judicial action, and (2) the IRS must collect proceeds as a result of the action.  Cooper v. Commissioner, 136 T.C. 597, 600 (2011).

In the event the whistleblower is not satisfied with the IRS' award determination under section 7623, Congress has authorized that whistleblowers

---

[5]The Bipartisan Budget Act of 2018, Pub. L. No. 115-123, sec. 41108, 132 Stat. at 158-159, amended some of the terminology in sec. 7623, including adding a definition of "proceeds" in subsec. (c).  We recently held that these amendments apply to any whistleblower claim until the WBO's determinations can no longer be further challenged in this Court or elsewhere, so the amendments would apply here.  See Lewis v. Commissioner, 154 T.C. ___, ___ (slip op. at 16) (Apr. 8, 2020).

[6]These percentages are subject to limitations not applicable here.  See sec. 7623(b)(2) and (3); see also sec. 301.7623-4(b) and (c), Proced. & Admin. Regs.

**[\*13]** may seek judicial review of their award determinations. Sec. 7623(b)(4). This right does not apply to all award determinations; whistleblowers may only seek judicial review of award determinations made under section 7623(b).[7] In other words judicial review is available only for award determinations where the proceeds in dispute exceed $2 million and an individual target taxpayer has a gross income of at least $200,000 for the tax year(s) at issue. Here the proceeds in dispute far exceed the dollar limitations and there were no individual taxpayers. Thus, we have jurisdiction to review the WBO's determination as to Mr. Kennedy's claims for award.

### B. Mr. Kennedy's Claims

When the WBO receives a claim for award (i.e., Form 211), it makes an initial determination to accept or reject the claim at its threshold. See sec. 301.7623-1(c)(1), (4), Proced. & Admin. Regs.; see also Internal Revenue Manual

---

[7]By "judicial review," we mean a review of the administrative record to determine whether the WBO abused its discretion in making its determination. This type of review is available only for determinations made under sec. 7623(b). A whistleblower may appeal a determination made under sec. 7623(a) to this Court, but our review in that instance is limited to determining whether the WBO erred in classifying a claim as not meeting the threshold limitation in sec. 7623(b)(5)(B), which is an affirmative defense that must be raised and proven by the Commissioner. Lippolis v. Commissioner, 143 T.C. 393, 400 (2014); Worthington v. Commissioner, T.C. Memo. 2020-141, at \*20.

**[\*14]** (IRM) pt. 25.2.2.4 (Aug. 7, 2015).[8]  This determination is based solely on the face of the whistleblower's submission.  See sec. 301.7623-1(c)(1), (4), Proced. & Admin. Regs.  If the claim for award passes the threshold, the WBO then refers the claim to an IRS operating division for further consideration.  IRM pt. 25.2.2.4(3); sec. 301.7623-4(d)(2)(ii), Proced. & Admin. Regs.

The operating division then decides whether to take administrative or judicial action against the target taxpayers.  See sec. 301.7623-4(d)(2)(ii), Proced. & Admin. Regs.  If the operating division declines to take administrative or judicial action or did not collect proceeds, as is the case here, then the claim for award is returned to the WBO for denial.  Sec. 301.7623-3(c)(8), Proced. & Admin. Regs.

Here three points are crucial.  First, under the plain text of section 7623(b)(1) an award depends upon "both the initiation of an administrative or judicial action and collection of tax proceeds."  Cooper v. Commissioner, 136 T.C. at 600.  Second, we do not review an operating division's decision whether to audit a target taxpayer in response to a whistleblower claim.  Third, we do not

---

[8]The IRM does not have the force of law.  Griswold v. United States, 59 F.3d 1571, 1576 n.8 (11th Cir. 1995) ("While the IRS Manual does not have the force of law, * * * the manual provisions do constitute persuasive authority as to the IRS's interpretation of the statute and the regulations."); Lane v. Commissioner, T.C. Memo. 1992-11.

[*15] have the authority to require an operating division to explain its decision not to audit.  See id. at 600-601; see also Lacey v. Commissioner, 153 T.C. 146, 163-164 (2019).  Very importantly, "Congress has not conferred on the Tax Court authority to direct the IRS to commence or continue an audit * * *.  Consequently, a case in which the whistleblower asks us to order an audit or to order collection will fail."  Lacey v. Commissioner, 153 T.C. at 166.  We have held that the text of section 7623 confers on us jurisdiction to review the WBO's determinations only.  See id. at 163-164.  Therefore, the question before us is whether the WBO abused its discretion in denying the claims given the actions taken by LB&I and TEGE.  We conclude that it did not.

Mr. Kennedy claims that taxpayer 1 (and a vast number of its current, predecessor, and affiliated entities, including taxpayers 2 and 3) owes over $150 million because it redirected VEBA trust plan assets to its own use.  Under section 4976(a), such redirection would require taxpayer 1 to pay "a tax equal to 100 percent of such disqualified benefit."  A "disqualified benefit" includes any portion of a welfare benefit fund (in this case a VEBA) reverting to the benefit of the employer.  Sec. 4976(b)(1)(C).  Mr. Kennedy explains that because no excise tax return was filed when the plan assets were redirected, taxpayer 1 (and its current, predecessor, and affiliated entities) owes:  (1) approximately $150 million

[*16] in excise taxes; (2) penalties under section 6651 for failing to file Forms 5330, Return of Excise Taxes Related to Employee Benefit Plans; (3) penalties for fraud under section 6663; and (4) penalties for false and fraudulent statements made on refund claims filed by taxpayer 1's predecessor subsidiary, the employer organization for taxpayer 3.[9]

Important here is that taxpayer 3's employer organization filed for bankruptcy almost 10 years before the WBO received Mr. Kennedy's Form 211. In connection with that bankruptcy, an affiliate of taxpayer 3 pursued refund claims for overpaid section 4251 excise taxes. The IRS' proof of claim in that same bankruptcy countered that the section 4251 excise taxes were understated. Litigation ensued, and the case later settled with the subject taxpayers (including taxpayer 1 as successor-in-interest) paying the IRS over $24 million.

Mr. Kennedy alleged that his claims of section 4976 excise tax violations and various fraud claims would have offset the initial section 4251 refund claims litigated in the bankruptcy described above. He therefore asserts that he is entitled

---

[9]These four points are a summary of Mr. Kennedy's allegations as related to Federal tax violations. Mr. Kennedy also alleges numerous nontax violations, including: (1) embezzlement; (2) violations of 18 U.S.C. secs. 286 (2012) (conspiracy to defraud the government with respect to claims) and 287 (false, fictitious or fraudulent claims); (3) violations of the Employee Retirement Income Security Act of 1974; (4) violations of the Sarbanes-Oxley Act of 2002; and (5) bankruptcy fraud.

**[\*17]** to a share of the proceeds collected in the bankruptcy action. However, the bankruptcy action had nothing to do with the VEBA issues here and related section 4976 excise tax; it had to do with an understatement of section 4251 excise tax. As explained <u>supra</u>, the first requirement of section 7623(b) is that the IRS proceed with an administrative or judicial action based on the information the whistleblower provided. <u>See</u> sec. 7623(b)(1); <u>see also</u> <u>Cooper v. Commissioner</u>, 136 T.C. at 600. The second requirement of section 7623(b) is that the IRS collect proceeds as a result of the administrative or judicial action. <u>Id.</u> Here, Mr. Kennedy's claim fails both requirements. The information that Mr. Kennedy provided to the WBO 10 years after the bankruptcy litigation began had nothing to do with the bankruptcy action or the proceeds collected in that action. Thus, under section 7623(b) Mr. Kennedy is not entitled to a share of the proceeds collected in the bankruptcy action.

What happened here is that Mr. Kennedy's claim was first considered by LB&I, but LB&I determined that TEGE-EO would be better suited for evaluating the claim because the crux of the claim involved tax-exempt entities and excise tax issues. However, TEGE-EO had jurisdiction over only tax-exempt entities. To accommodate that limitation the WBO segregated the different target taxpayers in Mr. Kennedy's claim. TEGE-EO reviewed the claim against taxpayer 2 and

**[*18]** decided not to proceed further.  It audited taxpayer 3's return, and the result was "no change."

We realize that the administrative record evinces that no operating division independently reviewed the claim against taxpayer 1.  However, we are a "court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress."  Naftel v. Commissioner, 85 T.C. 527, 529 (1985); see sec. 7442.  Section 7623, as it stands, does not confer on us jurisdiction to review the audit decisions of IRS operating divisions.  As we explained in Lacey:

> The IRS and not the Tax Court decides whether and how to audit a taxpayer's return, and section 7623(b)(4) confers on the Tax Court jurisdiction not to supervise audits but to review the acts of the WBO. Clearly it is not the WBO but rather an IRS "Operating Division" that makes the "determination not to proceed with an action."  26 C.F.R. sec. 301.7623-4(d)(2)(ii) * * *.  The Tax Court does not review such audit decisions.  [Lacey v. Commissioner, 153 T.C. at 167; emphasis added.]

While we note that it is unclear whether taxpayer 1 was independently evaluated by an operating division, it is clear that taxpayers 1, 2, and 3 are all related. TEGE-EO thoroughly evaluated taxpayers 2 and 3 and, in fact, completed a two-year examination of taxpayer 3's return that resulted in no change (and likewise, no collected proceeds).  Thereafter, the WBO pursued the question as to whether taxpayer 1 was evaluated and ultimately determined it had no authority to question the two operating divisions.

[*19] The WBO denied Mr. Kennedy's claims as to taxpayers 1 and 2 because the IRS operating divisions took no action as a result of the information Mr. Kennedy provided and hence collected no proceeds. The WBO denied Mr. Kennedy's claim as to taxpayer 3 despite taking further action because there was no change as a result of the examination of taxpayer 3's return and likewise no collected proceeds. These determinations were not an abuse of discretion on the WBO's part. Thus, respondent is entitled to summary judgment in his favor.

## Conclusion

We hold that the WBO did not abuse its discretion in denying Mr. Kennedy's three claims for award.

To reflect the foregoing,

An appropriate order and decision will be entered.